STATE OF NORTH CAROLINA v. ARTHUR SYLVESTER CHAPMAN

No. 8018SC326

(Filed 7 October 1980)

**Robbery § 5.4— armed robbery charged – failure to instruct on felonious larceny – error**

In a prosecution for armed robbery the trial court erred in failing to instruct the jury on the lesser included offense of felonious larceny where defendant's testimony that he did not at any time draw a knife on the victim's assistant manager, did not have a knife in his possession at any time while he was with the assistant manager, did not say anything at any time to threaten or force the assistant manager to give him money, but merely walked out with the money when the assistant manager turned his back to defendant would have negated the element of violence or intimidation required to elevate the crime of felonious larceny to that of common law robbery or armed robbery; moreover, the fact that defendant closed the door to the assistant manager's office as he ran out and locked it from the outside, leaving the assistant manager confined inside was not precedent to nor concomitant or contemporaneous with the act of taking the money bag, and the act of closing and locking the door therefore could not be held to constitute the requisite violence or putting in fear to make the crime in question robbery as a matter of law.

APPEAL by defendant from *Seay, Judge.* Judgment entered 30 October 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 September 1980.

Defendant was charged in a proper indictment with armed robbery pursuant to G.S. 14-87. The evidence for the State tended to show that defendant, a former employee of Tuesday's Restaurant in Greensboro, went to the restaurant on 17 June 1979 at approximately 10:00 p.m. He entered the restaurant office and found the assistant manager, John Richard Jones, at his desk involved with the daily paper work, having just completed "bagging up" the money accumulated during the day. Defendant asked that the bartender leave so he could talk to Jones; and Jones, believing he "was going to get some sort of a confession or something," requested that the bartender leave, which he did. Defendant then spoke briefly with Jones to the effect that he thought he should not have been arrested for the theft of some meat that had been taken from the restaurant. During the conversation defendant grabbed Jones around the neck, pulled him to one knee and stabbed him. He then said he wanted the truth (presumably about the stolen meat) and that Jones had better get it for him; and he stabbed Jones a second time. When defendant released Jones, Jones fell back onto a partition in the office. Defendant then, while holding the knife in front of Jones, picked up the bag containing the money and left through the door to the office, closing the door behind him and locking it from the outside leaving Jones confined inside. The bag contained the sum of $5,165.73, all in cash.

Defendant's evidence consisted solely of his testimony on his own behalf. He testified that he and Jones smoked a joint of marijuana and drank enough gin to make them intoxicated. When Jones "had enough alcohol into his system to be drunk," he turned his back toward defendant. Defendant thereupon "picked up the money bag and ran out the door." Defendant testified:

> I closed the door and dropped the lock over the latch, and I ran out of the restaurant. I did not at any time draw a knife on Mr. Jones. I did not have a knife in my possession at any time while I was with Mr. Jones. I did not say anything at any time to threaten or force Mr. Jones into giving me any money.

The trial court charged the jury on the crimes of armed robbery and common law robbery and instructed the jury that it could find defendant guilty of either of those crimes or it could find him not guilty. The jury found the defendant guilty of the crime of armed robbery.

From a judgment of imprisonment, defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General John R.B. Matthis and Associate Attorney John F. Maddrey, for the State.*

*Robert L. McClellan, Assistant Public Defender, for defendant appellant.*

WHICHARD, Judge.

Defendant assigns as error the failure of the trial court to charge the jury on the lesser included offense of felonious larceny.

> [R]obbery, a common-law offense not defined by statute in North Carolina, is merely an aggravated form of larceny, and has been defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation.' Absent the elements of violence or intimidation, the offense becomes larceny. (Citations omitted.)

*State v. Bailey,* 4 N.C. App. 407, 411, 167 S.E. 2d 24, 26 (1969).

Nothing else appearing, the defendant's testimony that he did not at any time draw a knife on the victim's assistant manager, Jones; did not have a knife in his possession at any time while he was with Jones; and did not say anything at any time to threaten or force Jones to give him the money, but merely walked out with the money when Jones turned his back to defendant, if believed by the jury, would have negated the element of violence or intimidation required to elevate the crime of felonious larceny to that of common law robbery or armed robbery. The State contends, however, that the defendant, by his own admission, closed the door to Jones' office as he ran out and locked it from the outside, leaving Jones confined inside; and that this additional fact constitutes the requisite

use of force or violence in the taking of the property of another necessary to preclude a possible verdict of felonious larceny.

The general rule applicable to the State's contention in this regard is set forth in 67 Am. Jur. 2d, *Robbery*, § 26, p. 45 (1973) as follows:

> The violence or intimidation [necessary to elevate felonious larceny to robbery] *must precede or be concomitant or contemporaneous with the taking.* Hence, although the cases are not without conflict, the general rule does not permit a charge of robbery to be sustained merely by a showing of retention of property, *or an attempt to escape,* by force or putting in fear. (Emphasis supplied.)

*See also* Annot., 93 A.L.R.3d 643 (1979).

The law of this jurisdiction is in accord with the general rule quoted above. In *State v. John,* 50 N.C. 163 (1857), while the victim and the defendant were examining a "bill of money" which the defendant said he had found, the victim felt the defendant's hand in his pocket on his pocketbook. The victim seized the defendant's arm at the same time the defendant snatched the victim's money, and a scuffle ensued in which the victim was thrown out of his wagon. When the victim arose, the defendant had escaped with the victim's pocketbook and the "bill of money." The court there viewed the struggle between defendant and the victim as "fairly imputable to an effort on the part of the prisoner to get loose from [the victim's] grasp and make his escape," *John,* at 169; and it held that the facts did not constitute highway robbery. The court said: "There was no violence — no circumstance of terror resorted to for the purpose of inducing the prosecutor to part with his property for the sake of his person." *John,* at 167.

In the case *sub judice,* the defendant's admitted act of closing and locking the office door as he exited, leaving the victim's assistant manager confined in the office, was not precedent to nor concomitant or contemporaneous with the act of taking the money bag. It is, even more so than the scuffle between the defendant and the victim in the *John* case, "fairly imputable to an effort on the part of the [defendant] to . . . make his escape." Thus, the act of closing and locking the door cannot be held to constitute the requisite violence or putting in fear to

make the crime in question robbery as a matter of law, so as to preclude the possibility of a verdict of felonious larceny.

It was incumbent upon the trial court, therefore, to charge the jury on the lesser included offense of felonious larceny. Its failure to do so denied the defendant the potential benefits of his own testimony by effectively limiting the possible verdicts to guilty of robbery (armed or common law) or not guilty. The jury could not comply with the court's instructions and at the same time return a verdict giving credence to the defendant's testimony in his own behalf.

> When a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser, all of which could be proved by proof of the allegations in the indictment. Further, when there is *some evidence* supporting a lesser included offense, a defendant is entitled to a charge thereon even when there is no specific prayer for such instruction, and error in failing to do so will not be cured by a verdict finding defendant guilty of a higher degree of the same crime.

*State v. Bell*, 284 N.C. 416, 419, 200 S.E. 2d 601, 603 (1973). (Emphasis supplied.)

Because of the trial court's failure to instruct the jury on the lesser included offense of felonious larceny, there must be a

New trial.

Judges HEDRICK and HILL concur.