STATE OF NORTH CAROLINA v. W. D. HOPE

No. 8416SC1196

(Filed 15 October 1985)

**Robbery § 4.7— robbery with a firearm — use of force in robbery — evidence not sufficient**

The evidence was insufficient to support a conviction for robbery with a firearm where defendant entered a store wearing a long blue coat, put on a tan coat at the back of the store, left his own coat in the rear of the store, started to walk out without paying for the tan coat, argued with the clerks when challenged by them, threatened to kill one of the clerks if he did not keep quiet after the clerk noticed that defendant had a gun, and started out the door. The element of force or intimidation necessary for an armed robbery must be precedent to or concomitant with the taking, and the crime of larceny was complete when defendant put on the tan coat, left his own in the rear of the store, started to walk out, and responded to the clerk's comment "that's not your coat" with the reply "yes, it is"; at most, the victims were induced by the threats to relent in their attempts to convince defendant to give back what he had already taken.

Judge WEBB dissenting.

APPEAL by defendant from *Barnette, Judge.* Judgment entered 24 May 1984 in Superior Court, SCOTLAND County. Heard in the Court of Appeals 27 August 1985.

*Attorney General Thornburg, by Associate Attorney General Dolores O. Nesnow, for the State.*

*Appellate Defender Adam Stein, by First Assistant Appellate Defender Malcolm Ray Hunter, Jr., for defendant appellant.*

BECTON, Judge.

From a conviction of robbery with a firearm, defendant, W. D. Hope, appeals.

On 31 January 1984, Williamson and Barringer were working at Ned's Outlet and Texaco when defendant entered the store wearing a long blue coat. Defendant went to the back of the store, and he returned wearing a tan coat belonging to Ned's Outlet. He left his coat as an "exchange." Defendant did not attempt to pay for the coat, and he walked toward the store's exit.

Williamson stopped defendant and told him he was wearing a coat belonging to the store. Defendant denied this, and Williamson brought defendant to the back of the store where they found the blue coat defendant had left. Williamson then brought defendant to Barringer in the front of the store, and Williamson went to the cash register. Defendant told Barringer he wanted to trade coats, but Barringer said they didn't trade coats. Defendant then headed for the exit once again, and Barringer asked him to stop. At this point, Williamson noticed a gun in defendant's pants and warned Barringer.

Barringer testified at trial that he told Williamson to call the police, and that defendant then threatened to kill Barringer if he did not keep quiet. Williamson's testimony indicated that defendant made the threat before Barringer told Williamson to call the police.

Of four possible verdicts—guilty of robbery with a firearm, guilty of common law robbery, guilty of misdemeanor larceny, and not guilty—the jury returned a verdict of guilty of robbery with a firearm.

Defendant raises two contentions on appeal: (1) the evidence was insufficient to go to the jury on the charge of robbery with a firearm because the threat of force was subsequent to the taking, and (2) appointed defense attorney failed to provide effective

---

---

assistance of counsel at the sentencing hearing. We agree with defendant on his first argument and reverse the conviction. Therefore, we need not address the second argument.

Defendant asserts that the charge of robbery with a firearm should have been dismissed because the evidence was insufficient to prove the element of taking by force or a threat of force. On a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense and that the defendant was the perpetrator. *State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980). Defendant's motion to dismiss the armed robbery charge should have been granted unless there was substantial evidence of each element of armed robbery, which is "the taking of the personal property of another in his presence or from his person without his consent by endangering or threatening his life with a firearm or other deadly weapon with the taker knowing that he is not entitled to the property and the taker intending to permanently deprive the owner of the property." *Id.* at 102, 261 S.E. 2d at 119 (citation omitted); *see* N.C. Gen. Stat. Sec. 14-87(a) (1981).

The evidence shows that, while still in the back of the store, defendant removed his own blue coat and put on a tan coat belonging to Ned's Outlet. Defendant then walked toward the exit, leaving his old blue coat in the back of the store, without attempting to pay for the tan coat. The State presented the testimony of Mr. Williamson as follows:

Q. After you saw that the defendant was leaving — with the defendant leaving with the coat on, what, if anything, did you say to him or do?

A. As he was walking toward the door, I said, "Excuse me." He stopped. I said, "That's not your coat," and then he started to arguing with me.

Q. Did you — do you recall the words of the argument?

A. Yes.

Q. Okay. What did the defendant say to you?

A. Okay. As I stopped him, I said, "That's not your coat." He said, "Yes, it is." I said, "That's not the coat you came in here

State v. Hope

with." He said, "Yes, I did." And I took him to the back of the store where he had laid his coat.

Mr. Williamson testified that he then took defendant to Donald Barringer, who spoke briefly with defendant. Mr. Williamson's testimony continued:

Q. Okay. And what happened at that time?

A. Well, as I was watching him, he started back out toward the front, and that's when Donald started yelling at him, telling him that was his coat.

Q. Did the defendant still have on the coat at that time?

A. Yes, sir.

Q. Now, you stated that Donald Barringer told him what?

A. That wasn't his coat, that it belonged to the store.

Q. What happened, then?

A. Okay. As he was telling—yelling at him, he just kept walking, just like he didn't hear it.

Q. Go on.

A. And then after he got on a little closer to me, that's when Donald stopped him and when he did, that's when I pointed out the gun.

*   *   *

Q. Now, at any time, did you hear the defendant say anything after you informed Donald Barringer that he had the gun?

A. Yes. He told Donald that he better be quiet or he kill him.

Q. Where were you standing at this time?

A. Behind the counter.

Q. What did you do after the defendant told Donald Barringer to be quiet, that if he didn't be quiet, he would kill him?

A. Donald told me to call the police, and I was holding the phone when he said that, but I was scared to dial.

*   *   *

Q. How long did the defendant remain there after he told you that he would kill Donald Barrington [sic]?

A. After he said that, he started out the door.

Q. What did you do at that point?

A. I called the police.

Defendant had taken, and indicated his intention to keep, the tan coat before making any threats. The issue remains whether the technical "taking" was part of a "continuous transaction," as the State contends, or a discrete event ending before the threats were made.

The State advances several theories as to when the armed robbery transaction, and thus the taking, was completed: "when the defendant left the premises"; when the victims were induced to "relinquish their control of the property"; when the defendant left "the presence of one or both victim(s)"; and when the defendant took "possession" of the tan coat, rather than mere "custody." We are not convinced.

It is now well established that larceny does not require asportation beyond the confines of the building and may be completed before the perpetrator leaves the premises of the victim. *State v. Reid,* 66 N.C. App. 698, 311 S.E. 2d 675 (1984); *State v. Walker,* 6 N.C. App. 740, 171 S.E. 2d 91 (1969). In the case *sub judice,* when the defendant put on the tan coat, left his own in the rear of the store, started to walk out, and responded to Mr. Williamson's comment "That's not your coat" with the reply "Yes, it is," the crime of larceny was complete. The victims "relinquished control" of the coat before the threats; they lost control of the coat when the defendant put it on and walked toward the exit. At most, the victims were induced by the threats to relent in their attempts to convince defendant to give back what he had already taken. The defendant had more than "custody" of the coat, as a customer trying on a coat might have, once he expressed his intent to keep it without paying. This occurred before the threats were made.

The element of force or intimidation necessary for an armed robbery must be precedent to or concomitant with the taking.

*State v. Richardson*, 308 N.C. 470, 476, 302 S.E. 2d 799, 803 (1983); *State v. John*, 50 N.C. 163 (1857); *State v. Chapman*, 49 N.C. App. 103, 270 S.E. 2d 524 (1980). The use of force or intimidation to retain property taken unlawfully does not transform a larceny into a robbery. *Richardson*. Similarly, evidence of the use of force to escape is not sufficient to support an armed robbery conviction. *John*.

The defendant in *John* had reached into the victim's pocket. The victim seized defendant's arm, and they struggled until defendant fell off the wagon and escaped with the victim's property. The Supreme Court found the evidence of highway robbery insufficient because there was nothing to show that violence was used to *induce* the victim to part with his property out of fear. 50 N.C. at 167. In *Richardson*, the Supreme Court reaffirmed this 126-year-old decision:

> [T]he court [in *John*] viewed the struggle between the defendant and the victim as "fairly imputable to an effort on the part of the prisoner to get loose from [the victim's] grasp and make his escape." [*John*] at 169. The holding in *John* indicates that in this State, the defendant's use of force or intimidation must necessarily precede or be concomitant with the taking before the defendant can properly be found guilty of armed robbery. That is, the use of force or violence must be such as to *induce* the victim to part with his or her property. This rule appears to be in accord with the majority of jurisdictions.

308 N.C. at 477, 302 S.E. 2d at 803 (citations omitted). In the case at bar, the threats were made, not to induce the victims to part with the coat, but to escape, retain the coat, and induce the victims to refrain from calling the police. Even the testimony of Williamson indicates that the threats were made only after the gun was inadvertently noticed by Williamson. We believe the threats are "fairly imputable to an effort on the part of the [defendant] to . . . make his escape." *John*, at 169; *see Chapman*, 49 N.C. App. at 106, 270 S.E. 2d at 526.

The State contends that the taking and the threats were so joined in time and circumstance as to be inseparable. The State cites the Model Penal Code Sec. 222.1(1) (1962) for the proposition that violence used "in an attempt to commit theft or in flight

after the attempt or commission" constitutes robbery. In this regard, we note that the Model Penal Code Sec. 222.1(1) stands in contrast to the settled law in this jurisdiction. *See Richardson.* The State also cites three cases in support of the "continuous transaction" theory: *State v. Handsome,* 300 N.C. 313, 266 S.E. 2d 670 (1980); *State v. Lilly,* 32 N.C. App. 467, 232 S.E. 2d 495, *cert. denied,* 292 N.C. 643, 235 S.E. 2d 64 (1977); *State v. Dunn,* 26 N.C. App. 475, 216 S.E. 2d 412 (1975). These cases do not control the present case because each involves violence that *preceded* the taking and, in effect, made the taking possible.

For the reasons stated above, we reverse the conviction of defendant for armed robbery and order a new trial on the misdemeanor larceny charge.

Reversed and new trial ordered.

Judge WEBB dissents.

Judge MARTIN concurs.

Judge WEBB dissenting.

I dissent. I believe the evidence for the State shows the use of the firearm was concomitant with the taking of the property. The test as to when a larceny is complete should not be the test as to whether a deadly weapon was used in the taking. In this case the jury could have found that the defendant started out of the building with the property. When challenged he used a deadly weapon to remove the property from the building. This supports a finding that deadly force was used to take the property.