STATE OF NORTH CAROLINA v. W. D. HOPE

No. 625A85

(Filed 2 July 1986)

**Robbery § 4.3— robbery with a firearm — use of force — evidence sufficient**

The State introduced sufficient evidence to permit a rational trier of fact to find beyond a reasonable doubt that defendant committed the offense of armed robbery where defendant entered a store, took off his blue coat and tried on a tan or beige coat that belonged to the store; defendant never offered to pay for the coat and was told that the store did not trade coats; one attendant at the store, Barringer, told defendant to stop as defendant started to walk out of the store with the coat; a second attendant, Williamson, discreetly pointed out a gun in defendant's waistline; Barringer told Williamson to call the police; defendant told Barringer to be quiet or he would be killed; defendant told Williamson, referring to Barringer, "I'll kill him, I'll kill him"; Williamson was too afraid to call the police while defendant was in the store; and defendant was allowed to take the coat from the store only because he had a gun and had threatened to kill Barringer. N.C.G.S. § 14-87(a).

APPEAL by the State under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 77 N.C. App. 338, 335 S.E. 2d 218 (1985), reversing the defendant's conviction of robbery with firearms and other dangerous weapons, N.C.G.S. 14-87 (a), and ordering a new trial. Heard in the Supreme Court on 11 March 1986.

*Lacy H. Thornburg, Attorney General, by Dolores O. Nesnow, Associate Attorney, for the State-appellant.*

*Malcolm R. Hunter, Jr., Appellate Defender, for the defendant-appellee.*

MITCHELL, Justice.

The defendant was convicted of robbery with firearms or other dangerous weapons (armed robbery) upon a proper indictment and was sentenced to imprisonment for a term of twenty-five years by *Barnette, J.,* on 24 May 1984 in Superior Court, SCOTLAND County. The defendant appealed to the Court of Appeals.

The majority of the panel in the Court of Appeals concluded that the evidence was insufficient to support a finding of the element of taking by the use or threatened use of a dangerous weap-

on. It viewed the taking in the present case as a discrete event that was completed before any threats were made and therefore concluded that the element of force was not precedent to or concomitant with the taking as is required for robbery. As a result, the Court of Appeals reversed and ordered a new trial at which the defendant would be tried for misdemeanor larceny. Having ordered a new trial, the Court of Appeals did not reach the issue of ineffective assistance of counsel raised by the defendant. We reverse the decision of the Court of Appeals and remand this case to that court for its consideration and decision as to the remaining issue.

The State's evidence at trial tended to show that on 31 January 1984, Larry Williamson and Donald Barringer were working at Ned's Outlet and Texaco in Laurinburg, North Carolina. Around 3:00 p.m. the defendant entered the store wearing a long blue coat. Williamson testified that the defendant walked to the back of the store and "when he came back through, he had on a long, tan coat." The defendant made no attempt to purchase the tan coat which belonged to Barringer. The defendant's blue coat was in the back of the store on a guitar amplifier. Williamson stopped the defendant and told him that the coat he was wearing was not his. The defendant stated that it was. Williamson escorted the defendant to the back of the store where he had left the blue coat. Williamson then took the defendant to talk with Barringer and returned to the cash register.

Approximately thirty seconds later the defendant "started back out toward the front and . . . [Barringer] started yelling at him, telling him that was . . . [Barringer's] coat," and that it belonged to the store. The defendant was still wearing the tan coat as Barringer was yelling and he "kept walking, just like he didn't hear it." Barringer stopped the defendant, and Williamson discreetly pointed out to Barringer a gun in the defendant's waistline. Barringer told Williamson to call the police, but Williamson was afraid to dial the telephone. The defendant told Barringer to be quiet or he would kill him. Barringer then ran to the back of the store, and the defendant told Williamson, referring to Barringer, "I'll kill him, I'll kill him." When he said this, his gun was still visible. The defendant then backed out of the store, and Williamson called the police. Neither Williamson nor Barringer

ever gave the defendant permission to take the coat, and they allowed him to do so only because he had a gun.

Barringer also testified. He corroborated much of Williamson's testimony. He testified that the defendant wanted to "trade his coat," but that he told the defendant he did not trade coats. The defendant then started walking out of the store with the beige coat. Barringer saw a gun stuck in the defendant's pants. At least one-half of the gun was visible. Barringer testified that when he told Williamson to call the police, the defendant said "he was going to kill me if . . . I wasn't quiet." Barringer stated that he never gave the defendant permission to take the coat. He did not prevent the defendant from taking it because he was afraid that the defendant would shoot him.

Sergeant Ben McNeill of the Laurinburg Police Department also testified. He stated that on 31 January 1984, he answered a call concerning a possible robbery at Ned's Outlet. Near the store he spotted the defendant. At that time he heard Barringer yell, "That's the man and he has a gun." McNeill ordered the defendant to freeze, searched him, and discovered a loaded gun in his beltline. The defendant was wearing a long beige coat.

The defendant testified in his own defense. He testified that on 31 January 1984, he had a loaded gun in his possession and was "wearing a long blue maxi coat." He entered Ned's Outlet and went to the back of the store and was "trying on a beige coat" when Williamson asked him if he needed assistance. The defendant said no, and Williamson returned to the front of the store. The defendant then testified that: "I took my coat off and laid it on the guitar rack and put on his coat and buttoned it up and started out the door." When he got to the door, Barringer asked what he had under the coat. The defendant testified that he "told him none of his damn business . . . ." Barringer then turned around and walked to the back of the store, and the defendant ran out of the door and across the street where he met Sergeant McNeill. The defendant denied making any threats while in the store.

The State contends that the Court of Appeals erred in reversing the defendant's conviction for armed robbery and ordering a new trial of the defendant for misdemeanor larceny. For the reasons stated herein, we agree.

At the close of the State's evidence and at the close of all the evidence, the defendant moved to dismiss the charge against him. This Court has repeatedly stated the test for determining whether a motion to dismiss should have been granted. In *State v. Riddick*, 315 N.C. 749, 759, 340 S.E. 2d 55, 61 (1986), we recently stated the test as follows:

> When a defendant moves under N.C.G.S. § 15A-1227(a)(2) for dismissal at the close of all the evidence, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied." The trial court is to view all of the evidence in the light most favorable to the State and give it all reasonable inferences that may be drawn from the evidence supporting the charges against the defendant. "The trial court is *not* required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss." The trial court must determine as a matter of law whether the State has offered "substantial evidence of all elements of the offense charged so any rational trier of fact *could find* beyond a reasonable doubt that the defendant committed the offense." (Emphasis added.)

(Citations omitted.)

We have said that under N.C.G.S. § 14-87(a), armed robbery is: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Beatty*, 306 N.C. 491, 496, 293 S.E. 2d 760, 764 (1982). In *State v. Richardson*, 308 N.C. 470, 477, 302 S.E. 2d 799, 803 (1983) this Court said that "the defendant's use of force or intimidation must necessarily precede or be concomitant with the taking before the defendant can properly be found guilty of armed robbery. That is, the use of force or violence must be such as to *induce* the victim to part with his or her property." It has also been held that "the exact time relationship, in armed robbery cases, between the violence and the actual taking is unimportant as long as there is one

continuing transaction amounting to armed robbery with the elements of violence and of taking so joined in time and circumstances as to be inseparable." *State v. Lilly,* 32 N.C. App. 467, 469, 232 S.E. 2d 495, 496-97, *cert. denied,* 292 N.C. 643, 235 S.E. 2d 64 (1977). This Court applied the same "continuous transaction" theory in *State v. Fields,* 315 N.C. 191, 201-02, 337 S.E. 2d 518, 525 (1985) and *State v. Handsome,* 300 N.C. 313, 318, 266 S.E. 2d 670, 674 (1980). In this jurisdiction to be found guilty of armed robbery, the defendant's use or threatened use of a dangerous weapon must precede or be concomitant with the taking, or be so joined with it in a continuous transaction by time and circumstances as to be inseparable. *State v. Fields,* 315 N.C. at 201-02, 337 S.E. 2d at 525; *State v. Richardson,* 308 N.C. at 476-77, 302 S.E. 2d at 803; *State v. Handsome,* 300 N.C. at 318, 266 S.E. 2d at 674. *State v. Lilly,* 32 N.C. App. at 469, 232 S.E. 2d at 496-97.

Applying the foregoing principles, we conclude that the State introduced sufficient evidence in the case *sub judice* to permit a rational trier of fact to find beyond a reasonable doubt that the defendant committed the offense of armed robbery. The evidence tended to show one continuous transaction with the element of use or threatened use of a dangerous weapon so joined in time and circumstances with the taking as to be inseparable.

The defendant entered the store, took off his blue coat and tried on a tan or beige coat that belonged to the store. The defendant never offered to pay for the coat. When the defendant told Barringer he wanted to trade coats, Barringer told the defendant he did not trade coats. When the defendant started to walk out of the store with the beige coat, Barringer told him to stop. Williamson discreetly pointed out to Barringer a gun in the defendant's waistline. Barringer told Williamson to call the police, and the defendant told Barringer to be quiet or he would be killed. The defendant then told Williamson, referring to Barringer, "I'll kill him, I'll kill him." Williamson testified that he was too afraid to call the police while the defendant remained in the store. Although nothing in evidence indicated that the victims cared if customers tried clothing on inside the store, neither Williamson nor Barringer gave the defendant permission to take the coat from the store. They allowed him to do so and parted with the coat only because they were afraid since he had a gun and threatened to kill Barringer. Therefore, the evidence was suf-

ficient to support a jury finding that the defendant's use or threatened use of the gun was inseparable from the taking and induced the victims to part with the coat.

This case is easily distinguishable from *State v. Richardson*, 308 N.C. 470, 302 S.E. 2d 799, relied upon by the majority in the Court of Appeals. As we pointed out in *Richardson*, the undisputed evidence in that case showed that as a result of an altercation between the victim and the defendant, the defendant struck the victim with a stick. The victim threw his duffle bag containing his wallet at the defendant solely in an effort to protect himself from further injury during their fight. The evidence conclusively showed that the defendant had no intent at that time to deprive the victim of his property and did not at that time "take" the property from him. It was only later after the victim had left the scene that the defendant went through the duffle bag and discovered the wallet. At that time, well after his use of a dangerous weapon, he first formed the intent to permanently deprive the owner of his property. We pointed out that a "defendant must have intended to permanently deprive the owner of his property *at the time the taking occurred* to be guilty of the offense of robbery." 308 N.C. at 474, 302 S.E. 2d at 802. We indicated that the use of the dangerous weapon by the defendant in *Richardson* was entirely separate from and unrelated to the taking of the victim's property by the defendant because the "defendant's initial threats were not made to *induce* [the victim] to part with his property." 308 N.C. at 477, 302 S.E. 2d at 803. As a result, we concluded that the evidence did not support a conviction of armed robbery. The facts in *Richardson* simply were not similar in any significant way to the facts presented by this case.

The majority in the Court of Appeals also relied upon *State v. John*, 50 N.C. 163 (1857) which we find inapplicable under the facts of the present case. In *John* the defendant placed his hand in the victim's pocket. The victim grabbed the defendant by the arm and a scuffle ensued during which the victim fell out of the wagon in which the two were sitting. All of the evidence tended to indicate that any violence on the part of the defendant in *John* was solely for the purpose of pulling away from the victim who had grabbed the defendant by the arm. In *John* we stated quite clearly that: "There was no violence — no circumstance of terror resorted to for the purpose of inducing the prosecutor to part

with his property for the sake of his person." *State v. John,* 50 N.C. at 167. In the present case, however, the State's evidence tended to show that the defendant's threatened use of the gun was for the purpose of inducing the victims to part with the coat and allow him to take it from the store.

The defendant's motion to dismiss in the present case was without merit. The majority in the Court of Appeals erred by reaching a decision and holding to the contrary.

Finally, in the Court of Appeals the defendant argued that he was entitled to a new·sentencing hearing because his attorney failed to provide effective assistance of counsel during the sentencing hearing in the present case. Since the Court of Appeals granted the defendant a new trial, it did not reach this issue. 77 N.C. App. at 339-40, 335 S.E. 2d at 219. Because we reverse the decision of the Court of Appeals, the ineffective assistance of counsel issue must be addressed. In deference to the authority of the Court of Appeals to render the first appellate consideration of this issue, we remand this case to that court with instructions to reinstate the defendant's appeal and proceed to a consideration of the ineffective assistance of counsel issue raised there by the defendant. *See, e.g., State v. Snyder,* 311 N.C. 391, 394, 317 S.E. 2d 394, 396 (1984); *State v. Nickerson,* 308 N.C. 376, 377, 302 S.E. 2d 221, 222 (1983).

Reversed and remanded.