STATE OF NORTH CAROLINA v. CHARLES WALLACE SUMPTER

No. 497A84

(Filed 29 August 1986)

1. **Burglary and Unlawful Breakings § 5.8— breaking or entering of residence — defendant as perpetrator of offense — sufficiency of evidence**

Evidence was sufficient to permit the jury to find that defendant was the person who committed the offense of breaking or entering with the intent to commit larceny at a particular residence where the evidence tended to show that, minutes before the break-in occurred, the doorbell rang; a resident of the house looked out a window and identified defendant standing on the front porch; defendant was carrying a blue jean jacket and had a .22 rifle beside him leaning against the window; the resident did not answer the door and the bell continued ringing, then ceased; moments later the resident heard someone kicking the basement door; and later a blue jean jacket was found on the basement floor.

2. **Burglary and Unlawful Breakings § 5.8; Criminal Law § 34.8— breaking or entering of residence — evidence of similar break-ins — sufficiency of evidence**

Evidence was sufficient to permit the jury to conclude that defendant was the person who committed the offense of breaking or entering with the intent to commit larceny at a particular residence where the evidence tended to implicate defendant in a scheme which embraced the commission of several break-ins in a particular neighborhood; a small dog which had been shot several times and a number of spent .22 cartridges were found on the floor of the residence in question; ballistic tests determined that the shots had been fired from a .22 rifle which was stolen from another home on the same day; and this gun was found in the back seat of the car which defendant stole from a murder victim and wrecked.

3. **Homicide § 21.3— first degree murder — defendant as perpetrator — sufficiency of evidence**

Evidence in a first degree murder case was sufficient to prove that defendant was the person who murdered the victim where it tended to show that defendant had the murder weapon in his possession when he was arrested a few hours after the victim was murdered; defendant also possessed a bottle of liquor of the same brand as that stolen from the victim's home; defendant stole the victim's car; a 12-gauge shotgun stolen from her home was found on the back floorboard; and defendant had blood on his clothing which did not originate from him and was consistent with the victim's and that of only 1.9 percent of the population.

4. **Robbery § 4.3— robbery with a dangerous weapon — sufficiency of evidence**

There was no merit to defendant's contention that the State produced insufficient evidence to support his conviction for robbery with a dangerous weapon where there was direct evidence that a .410 shotgun and other property was taken from the victim's residence and that the .410 shotgun was used to kill the victim; from this evidence the jury rationally could have found

beyond a reasonable doubt that defendant used violence before he left the victim's premises with the stolen property and therefore before the taking was over; and the State therefore produced sufficient evidence that the elements of violence and taking were part of one continuing transaction with the elements of violence and of taking so joined in time and circumstances with the taking as to be inseparable.

5. **Criminal Law § 138.24 — taking indecent liberties with minor — age of victim as aggravating factor improper**

　　The trial court erred in aggravating defendant's sentence for taking indecent liberties with a minor on the ground that the 13-year-old victim was very young, since the 13-year-old victim was no more vulnerable to the offense of indecent liberties with a minor than other victims of the offense, and she was only two years younger than the maximum age used to define the offense.

　　Justice MITCHELL concurring in the result.

　　Justices MEYER and MARTIN join in this concurring opinion.

APPEAL by defendant under N.C.G.S. § 7A-27(a) from judgments entered by *Friday, J.,* at the 18 May 1984 Criminal Session of CATAWBA County Superior Court sentencing defendant to life imprisonment for first degree murder (Case No. 84CRS 3909), and terms of years for two counts of felonious breaking or entering (Case Nos. 84CRS3912 and 84CRS3913), armed robbery (Case No. 84CRS5877) and taking indecent liberties with a minor (Case No. 84CRS5075). The defendant's motion to bypass the Court of Appeals as to the convictions other than murder was allowed.

　　*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the state.*

　　*Adam Stein, Appellate Defender, by Malcolm Ray Hunter, Jr., First Assistant Appellate Defender, for defendant appellant.*

EXUM, Justice.

This appeal raises questions involving (1) the sufficiency of the evidence to support the conviction of felonious breaking or entering, murder and armed robbery, and (2) the propriety of the trial court's aggravating the sentence given on the conviction of indecent liberties with a minor. We find the trial court improperly aggravated the sentence given on the conviction of indecent liberties with a minor. Otherwise we find no error in the trial.

## I.

John Hinson came home from work around 3:30 p.m. on 23 September 1983 and discovered the lifeless body of his daughter, Elizabeth Hinson Hawkins, lying on the dining room floor. She was wearing the top of her brown Hardee's uniform and was nude from the waist down. She had been shot twice, once in the right side and once in the head. The front entrance door to the house had been forced open. Missing from a closet in the bedroom Hinson shared with his wife were a .410 shotgun and a box of .410 shells; a 12-gauge shotgun and a box of 12-gauge shells; and a bottle of Kentucky Supreme Bourbon.

Hawkins left work at the Hardee's restaurant at 1:30 p.m. on 23 September 1983. A neighbor of the Hinsons saw Hawkins driving her yellow Datsun B-210 toward the Hinson residence at 2:10 p.m. and they waved to each other. Around 2:45, Jeanette Waldrup, Hawkins' sister, observed a white male with brown eyes and a blue shirt driving her sister's car erratically near the Hinson house.

Connie Clark testified that defendant pulled into her driveway in a little yellow car at approximately 2:55 p.m. on 23 September 1983. She went out to talk to him, and he asked her if she wanted to go to a party with him in Tennessee. She saw three firearms and a bottle of liquor, half full, in the car. Defendant appeared to have been drinking. Defendant was showing the guns to Clark's children and one child asked how one gun fired. Clark thought it was a .410 shotgun. Defendant pointed it out the window, shot it in the air and gave the spent shell to the child. Ballistics tests indicated this shell had been fired by the same gun which fired the shots which killed Hawkins. Defendant asked Clark if she had ever shot anyone and she answered, "No, why have you?" Defendant replied that he had but then recanted and said he was only kidding.

Defendant drove away from Clark's house but returned walking around 3:30 p.m. carrying a gun and a bottle of liquor and saying he had wrecked the car. Still carrying the gun and bottle of liquor, defendant walked to the house of a friend, Freddie Small, who agreed to drive defendant home. They passed a marked sheriff's department car and the deputy noticed defendant lie down as if to hide. The deputy stopped the truck and asked the name of

defendant. Defendant identified himself as Charles Sumpter; and the deputy, who had been told to be on the lookout for Charles Sumpter, arrested him. Police confiscated a .410 shotgun and a bottle of Kentucky Supreme Bourbon from the cab of the truck. The driver said the items belonged to defendant. Tests showed the .410 shotgun fired the shells recovered from Hinson's and Clark's homes.[1]

Defendant was taken to the station and asked about the blood on his jeans. Defendant explained that he had been deer hunting, shot a deer, and the blood on the knee of his jeans was from the deer. He also stated that the shotgun taken from him was his. He had bought it at a pawn shop in Lenoir for $85.

The police confiscated defendant's clothing. Bloodstains located on his jeans, shirt, the fly of his undershorts, and his boots were compared to blood samples taken from the victim. The blood on defendant's shirt and jeans was consistent with that of the victim and 1.90 percent of the general population and could not have originated from defendant. A similar comparison between the victim's blood and the blood on defendant's shorts and shoes could not be made because of the small amount of blood on those items, but tests indicated the blood on the shorts had the same enzyme type as that belonging to the victim and a different type from that belonging to defendant.

Defendant spent the night of 22 September 1983 at a house on 501 Table Rock Road in the same neighborhood as the Hinson house. Late in the morning on the next day, while defendant and thirteen-year-old Terri Jackson, the niece of defendant's girlfriend, were alone in the house, defendant pushed Terri down, pulled off her jeans and underpants and touched her with his hand on the front of her body close to where "she went to the bathroom." Terri eluded defendant's grasp, ran out of the house and told the mailman defendant had tried to rape her. Defendant walked away up the street.

A short while after these events occurred, a neighbor saw defendant walking near Dianne Reynolds' house, which was located near 501 Table Rock Road, carrying what appeared to be a

---

1. Police later recovered the 12-gauge shotgun stolen from the Hinson home on the floorboard of Hawkins' wrecked car.

gun. When Reynolds arrived home from work she discovered the basement door had been broken open and a loaded .22 automatic rifle had been stolen from her bedroom closet. An empty .22 rifle later was recovered from the back seat of Elizabeth Hawkins' car, which defendant stole and wrecked. Richard Dula, the owner of the gun, identified the .22 rifle recovered from Hawkins' car as his own.

Denise Horton, who also lived a short distance away from the house where defendant spent the night, found her back door similarly forced open when she arrived home after spending all day elsewhere. Nothing had been stolen, but items which had been stored in the bedroom in the closet and in drawers were strewn about. A dog was found on the floor dead, shot several times.

Thirteen-year-old Ronald Gordon was staying home sick from school with his seventeen-year-old sister on 23 September 1983. Around noon, Ronald, who lived at 204 Table Rock Road, was awakened by the front doorbell. He looked out the door and saw defendant, whom he knew through a mutual acquaintance, standing outside with a .22 rifle beside him. He noticed defendant also had a blue jean jacket with him. Ronald was afraid to answer the door and went to wake his sister. The doorbell continued to ring, then became silent. Moments later Ronald heard a noise like someone kicking at the basement door. Ronald and his sister ran out of the house and across the street and called the sheriff. When deputies arrived the house was empty and nothing appeared to be missing or to have been disturbed. A blue jean jacket, however, was found on the floor.

Around 1:30 or 2 p.m. on 23 September 1983 the doorbell rang at Faye Crump's home which was located a short distance from the Town and County neighborhood. By the time Mrs. Crump got to the door the caller had begun knocking. The caller, whom Mrs. Crump identified in court as defendant, asked to use the phone. Mrs. Crump permitted him to make a call and then observed him leave, walk down the road, and pick up a rifle which she had not seen before. Defendant returned, rang the doorbell, and asked if there were any .22 shells in the house he could buy. Mrs. Crump said she was sure there were none and defendant thanked her and left.

Defendant's girlfriend, the aunt of Terri Jackson, testified for defendant that defendant often stayed at the Jackson home and played games with Terri, her sister and her brother. She had never seen him assault or molest any of the children. Terri's brother gave similar testimony.

Defendant also called Dr. Harold Haas, a clinical psychologist, as a witness. Dr. Haas had conducted a battery of tests, including personality and intelligence tests as well as tests to detect the presence of brain damage. He found no evidence that defendant was preoccupied with sexual or violent activity. He concluded that defendant possessed relatively modest intelligence and possibly had suffered minimal brain damage. He opined that given these results and defendant's history of substance abuse, if defendant were using intoxicating substances, he would likely act on impulse and exercise poor judgment.

Defendant did not testify.

The jury found defendant guilty as charged of first degree murder of Hawkins on both premeditation and deliberation and felony murder theories; felonious breaking or entering of the residences of John Hinson, Dianne Reynolds, Gladys Gordon, and Denise Horton; robbery with a dangerous weapon from the Hinson residence; and felonious larceny of Hawkins' car and a .22 caliber rifle from the Reynolds residence.

Judge Friday sentenced defendant for the murder conviction, upon the jury's recommendation, to life imprisonment. He sentenced defendant to terms of years for the remaining convictions, all sentences to run consecutively.

## II.

Defendant makes several assignments of error challenging the sufficiency of the state's evidence. The test for measuring the sufficiency of evidence may be stated as follows: All evidence admitted, competent or incompetent, favorable to the state must be considered. The evidence must be taken in the light most favorable to the state. The state is entitled to all reasonable inferences that may be drawn from the evidence. Contradictions in the evidence are resolved favorably to the state. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984); *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). Only defendant's evidence which does not

contradict and is not inconsistent with the state's evidence may be considered favorable to defendant if it explains or clarifies the state's evidence or rebuts inferences favorable to the state. *State v. Bates*, 309 N.C. 528, 308 S.E. 2d 258 (1983); *State v. Burton*, 264 N.C. 488, 142 S.E. 2d 169 (1965). There must be substantial evidence of the facts sought to be proved. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt. *State v. Pridgen*, 313 N.C. 80, 326 S.E. 2d 618 (1985); *State v. Jones*, 303 N.C. 500, 279 S.E. 2d 835 (1981). Evidence is not substantial if it arouses only a suspicion about the facts to be proved, even if the suspicion is strong. *State v. Malloy*, 309 N.C. 176, 305 S.E. 2d 718 (1983).

## A.

[1] Defendant contends first that the evidence was not sufficient to permit the jury to find that defendant was the person who committed the offense of breaking or entering with the intent to commit larceny at the Gordon residence.

We disagree. Minutes before the break-in occurred, the doorbell rang. A resident of the Gordon house, Ronald Gordon, looked out a window and identified defendant standing on the front porch. Defendant was carrying a blue jean jacket and had a .22 rifle beside him leaning against the window. Gordon did not answer the door and the doorbell continued ringing, then ceased. Moments later Gordon heard someone kicking the basement door. Later a blue jean jacket was found on the basement floor. From this evidence a jury rationally could conclude beyond a reasonable doubt that defendant was the one who broke into the Gordon house.

## B.

[2] In a related argument defendant contends the evidence was not sufficient to permit the jury to conclude that defendant was the person who committed the offense of breaking or entering with the intent to commit larceny at the Horton residence.

The state's evidence linking defendant to the Horton break-in included the following: In addition to this residence, several other residences in the Town and County neighborhood, those of Dianne Reynolds, Denise Gordon and Elizabeth Hawkins were broken

into on 23 September 1983. Defendant was identified ringing the doorbell of the Gordon residence moments before the break-in there occurred. Defendant was also seen walking near the Reynolds residence and driving near the Hinson house. Defendant also rang the doorbell and knocked persistently at the Crump residence, which was located through the woods behind the Town and County neighborhood. When Mrs. Crump answered the door, defendant stated as his reason for calling that he needed to make a phone call. This evidence tends to implicate defendant in a scheme which embraced the commission of several break-ins, including the one committed at the Horton residence.

Furthermore, a small dog, which had been shot several times, and a number of spent .22 cartridges were found on the floor of the Horton residence. Ballistics tests determined that the shots had been fired from the .22 rifle which was stolen from the Reynolds home on 23 September 1983. This gun was found in the back seat of the car which defendant stole from Elizabeth Hawkins and wrecked.

Construing this evidence in the light most favorable to the state, we believe a jury could have inferred beyond a reasonable doubt that defendant was the person who broke into the Horton residence.

## C.

[3] Defendant also contends the state produced insufficient evidence to prove that defendant was the person who murdered Elizabeth Hawkins. The evidence linking defendant to this crime is substantial.

Defendant had the murder weapon in his possession when he was arrested a few hours after Hawkins was murdered. He also possessed a bottle of liquor of the same brand as that stolen from the victim's home. Defendant stole the victim's car. A 12-gauge shotgun stolen from her home was found on the back floorboard. Defendant had blood on his clothing which did not originate from him and was consistent with the victim's and that of only 1.9 percent of the population. We hold that the jury on the strength of this evidence rationally could have found beyond reasonable doubt that defendant murdered Hawkins.

### D.

[4]   Defendant argues finally that the state produced insufficient evidence to support his conviction for robbery with a dangerous weapon as defined by N.C.G.S. § 14-87(a). The state's evidence tended to show the following: The Hinson home was broken into on 23 September 1983. A number of items were stolen from the house, including a .410 shotgun, a 12-gauge shotgun, ammunition for both guns, and a bottle of liquor. All of these items were kept in the same area of the house; all were in defendant's possession shortly after the crime. Elizabeth Hawkins was found in the house dead, slain by a blast from the .410 shotgun taken from the house. Defendant was implicated in break-ins of other, unoccupied homes in the Town and County neigborhood on 23 September 1983. Nothing was taken in these break-ins except a .22 rifle and a bottle of liquor. Defendant rang the doorbell at a home behind the Town and County neighorhood which was occupied and when the door was answered, inquired if he could make a phone call.

Defendant contends that this evidence at most tends to show that he broke into the Hinson residence while it was unoccupied, took the items, and when Hawkins arrived unexpectedly, used force to retain the goods he had already taken. Defendant argues that a jury could not rationally find beyond a reasonable doubt from this evidence that defendant used force before or during the time he took the property he is charged with stealing and the issue remains in the realm of conjecture and speculation. Relying on *State v. Richardson*, 308 N.C. 470, 302 S.E. 2d 799 (1983), he says force used to retain property after it is already taken does not transform whatever offenses he committed into robbery.

In *Richardson*, the accused, armed with a stick, threatened a man carrying a duffel bag. The man threw the bag at defendant in self-defense and apparently fled. When the man later tried to retrieve his bag, defendant threatened him again, and the man left without the bag. The state argued defendant committed armed robbery when he threatened the owner when the owner attempted to retrieve the bag. This Court disagreed.

> Although many jurisdictions hold that evidence of a defendant's retention of property through the use of force or intimidation will support an armed robbery conviction, it appears that the majority of jurisdictions hold otherwise. . . . [T]he

defendant's use of force or intimidation must necessarily precede or be concomitant with the taking before the defendant can properly be found guilty of armed robbery. That is, the use of force or violence must be such as to *induce* the victim to part with his or her property.

*State v. Richardson,* 308 N.C. at 476-77, 302 S.E. 2d at 803.

We disagree that defendant's conviction for armed robbery must be reversed on the authority of *Richardson.* The operative principle in *Richardson* is that use of force or violence must be such as to induce the victim to part with property. This principle gives rise to a corollary that violence must precede or be concomitant with taking in order for the crime of robbery to be committed.

In order to apply these rules it is necessary to define when in a criminal transaction the element of taking is satisfied. For purposes of larceny the element of taking is complete in the sense of being satisfied at the moment a thief first exercises dominion over the property. *See State v. Carswell,* 296 N.C. 101, 249 S.E. 2d 427 (1978). For purposes of robbery the taking is not over until after the thief succeeds in removing the stolen property from the victim's possession.

Our holding in *State v. Hope,* 317 N.C. 302, 345 S.E. 2d 361 (1986), illustrates the application of the rules stated above. In *Hope* defendant entered a clothing store wearing a long blue coat. Defendant went to the back of the store and returned wearing a tan coat. A store attendant stopped defendant and told him the coat he was wearing belonged to the store. Defendant disagreed, and the two walked to the back of the store where they found defendant's blue coat. Defendant started walking towards the exit and was stopped by another attendant. The first attendant pointed out to the second attendant a gun in defendant's waistline. The defendant threatened to kill the second attendant and backed slowly out of the store. Defendant argued there was no evidence he used force until after he already had taken the coat and that his conviction for armed robbery was improper. This Court disagreed. We held that the state produced sufficient evidence to support defendant's conviction for robbery because the evidence showed "one continuing transaction with the elements of violence and of taking so joined in time and circumstances with the taking

as to be inseparable." Our conclusion that the evidence showed one continuing transaction is another way of stating that the taking was not over until the defendant departed from the store with the coat.

In this case there is direct evidence that a .410 shotgun and other property was taken from the Hinson residence and that the .410 shotgun was used to kill Elizabeth Hawkins. From this evidence the jury rationally could have found beyond reasonable doubt that defendant used violence before he left the victim's premises with the stolen property, and, therefore, before the taking was over. The state, therefore, produced sufficient evidence that the elements of violence and taking were part of "one continuing transaction with the elements of violence and of taking so joined in time and circumstances with the taking as to be inseparable."

### III.

[5] Defendant assigns error to the trial court's aggravating defendant's sentence for taking indecent liberties with a minor. The trial court aggravated defendant's sentence on the ground that the thirteen-year-old victim was very young.

In *State v. Hines*, 314 N.C. 522, 335 S.E. 2d 6 (1985), this Court stated:

> One of the purposes of sentencing is to impose a punishment commensurate with the offender's culpability. N.C. Gen. Stat. § 15A-1340.4(a) (1983). Age should not be considered as an aggravating factor in sentencing unless it makes the defendant more blameworthy than he or she already is as a result of committing a violent crime against another person. A victim's age does not make a defendant more blameworthy unless the victim's age causes the victim to be more vulnerable than he or she otherwise would be to the crime committed against him or her. . . .

> As this Court observed in *State v. Ahearn*, 307 N.C. 584, 603, 300 S.E. 2d 689, 701 (1983) (emphasis in original), *vulnerability* is clearly the concern addressed by this factor [of the victim's age]."

314 N.C. at 525-26, 335 S.E. 2d at 8. From what we said in *Hines* it is apparent that the determination of vulnerability must be

made in light of the crime committed. The offense of indecent liberties with a minor cannot be committed unless the victim is less than sixteen years of age. N.C.G.S. § 14-202.1 (1986). While a thirteen-year-old girl may be more vulnerable than a thirty-year-old woman to sexual assault, we cannot say that the victim's age made her any more vulnerable to the offense of indecent liberties with a minor than other victims of the offense. She was only two years younger than the maximum age used to define the offense. Because she was not for purposes of this offense "very young," defendant must receive a new sentencing hearing on his conviction for taking indecent liberties with a minor.

Case No. 84CRS3909—no error.

Case No. 84CRS3912—no error.

Case No. 84CRS3913—no error.

Case No. 84CRS5877—no error.

Case No. 84CRS5075—new sentencing hearing.

Justice MITCHELL concurring in the result.

I concur in the result reached by the majority. I am unable to concur fully, however, in the majority's reasoning in Part II. D. of its opinion.

We have previously indicated that in armed robbery cases, the exact time relationship between the violence and the actual taking is unimportant. *State v. Hope*, 317 N.C. 302, 305-06, 345 S.E. 2d 361, 363-64 (1986). We have held, instead, that "[i]n this jurisdiction to be found guilty of armed robbery, the defendant's use or threatened use of a dangerous weapon must precede *or* be concomitant with the taking, *or* be so joined with it in a continuous transaction by time and circumstances as to be inseparable." *Id.* at ---, 345 S.E. 2d at 364 (emphasis added). I believe the majority's apparent attempt to establish the exact moment when the taking was complete in the present case to be unwise and entirely unnecessary, since under *Hope* the exact time of the taking is unimportant. The majority's conclusion that the State produced suf-

ficient evidence in this case to show that "the elements of violence and taking were part of 'one continuing transaction with the elements of violence and of taking so joined in time and circumstances with the taking as to be inseparable'" is entirely sufficient to support its holding. The majority's statements in Part II. D. concerning the time at which the taking was over will simply add confusion to this area of the law, in my view, and are of no significance in resolving the issue at hand. I do not join in those statements which I view as mere *obiter dicta*.

Justices MEYER and MARTIN join in this concurring opinion.