STATE OF NORTH CAROLINA v. CHARLES ALFRED HURST

No. 8512SC854

(Filed 15 July 1986)

1. **Constitutional Law § 46— appointed counsel—motions to replace—denied without hearing—no error**

    The trial court did not err in a prosecution for armed robbery and felonious larceny by considering the indigent defendant's request for another counsel without a formal hearing where defendant raised no issue of conflict of interest or irreconcilable conflict; noted no instances of incompetency, lack of diligence, or questionable judgment; and apparently felt that his appointed counsel was "trying his best."

2. **Criminal Law § 70— tape recorded conversation—admission not prejudicial error**

    There was no prejudicial error in a prosecution for armed robbery and larceny in the admission of a taped conversation and a transcript of that conversation without proper authentication or in the denial of defendant's motion for a mistrial based on the admission of that evidence where the tape and transcript were cumulative and there was overwhelming evidence that defendant had committed the crime as charged. N.C.G.S. § 15A-1061 (1983).

3. **Criminal Law § 6— voluntary intoxication—refusal to instruct—no error**

    The trial court did not err in a prosecution for armed robbery and larceny by refusing to instruct the jury on voluntary intoxication where the only evidence supporting defendant's claim of intoxication was his own testimony that he and his friends "got high" about 7:00 a.m. on 6 August 1984; defendant claimed that he had had about two or three joints of marijuana and a "couple of nods" of cocaine and did not remember events of the latter part of the day until he woke up driving the victim's car at 8:00 p.m.; defendant claimed the events he recounted to officers in two separate interviews were suggested to him by friends and officers; there was no evidence regarding the effect the

1

---

**State v. Hurst**

---

drugs had on defendant's ability to reason at the time of the crime; and the crime was committed nearly nine hours after defendant got high.

**4. Criminal Law § 102.6— armed robbery—prosecutor's argument for conviction to prevent future murder by defendant—no prejudice**

The trial court did not commit reversible error in a prosecution for armed robbery and larceny by failing to strike a prosecutor's argument that was susceptible to the interpretation that the jury should convict defendant to keep him from returning to commit murder where the remark was not so grossly improper that it was likely to influence the verdict.

**5. Constitutional Law § 34— armed robbery and felonious larceny—taking of car and items in trunk—double jeopardy**

A single series of acts may not support convictions for armed robbery and felonious larceny when there has been only one taking from one victim at one time; defendant's act of taking control of a car and driving the car away from the victim constituted the single act of taking the car and the items within the car. N.C.G.S. § 14-72, N.C.G.S. § 14-87. North Carolina Constitution Art. I, § 19, U.S. Constitution Amendments V and XIV.

**6. Criminal Law § 138.14— consolidated sentencing—one judgment arrested—remanded**

A case was remanded for resentencing where convictions for armed robbery and felonious larceny were consolidated for judgment and sentencing; judgment was arrested on the armed robbery conviction; defendant's twenty-year sentence exceeded the total of the presumptive terms; the court did not indicate whether the additional years were added for the armed robbery or the felonious larceny or both; and one of the aggravating factors could apply to either one or both convictions. N.C.G.S. § 15A-1340.4(b).

APPEAL by defendant from *Farmer, Judge.* Judgment entered 9 May 1985 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 12 December 1985.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.*

*James R. Parish for defendant appellant.*

BECTON, Judge.

From judgments imposing prison sentences totaling twenty years following his conviction of robbery with a dangerous weapon and felonious larceny, defendant, Charles Alfred Hurst, appeals.

I

On 6 October 1984, Ms. Shields, who was shopping in Fayetteville, North Carolina, returned to her car and locked two grocery bags and her pocketbook, containing personal property valued at more than $400.00, in the trunk. She then unlocked the driver's door to enter the car, but she felt someone behind her. A young man told her to move over. She screamed, and the man pointed a gun at her and threatened to shoot if she screamed again. She asked the man to let her go, and another man standing in front of the car said, "Let her go." She slid out of the car, with the car keys in her hand, screamed and fled, but the man with the gun took the keys from her hand before she got away. He then drove the car away.

The next day, Ms. Shields' abandoned car was discovered by the police. In the glove compartment, there was a wallet containing a high school identification card with the defendant's name and picture on it. On 8 October 1984, defendant was positively identified by Ms. Shields in a photographic line-up.

Two members of the Fayetteville Police Department went to defendant's high school and picked him up. They took defendant to the Law Enforcement Center, arrested him, and read him his *Miranda* rights. Defendant waived his right to remain silent and described to the officers the events of 6 October 1984 substantially in accordance with Ms. Shields' account. He named his two accomplices and said that he went riding around town. He also said that he had thrown Ms. Shields' pocketbook into a trash can at his school. Defendant took the officers to the trash can, but the contents had been emptied into a dumpster. Defendant helped to search the dumpster; they found only a check and some other papers belonging to Ms. Shields. After broadcasting over the high school's public announcement system a request for assistance in retrieving the pocketbook, the officers were contacted by a student who took them to her home where she had Ms. Shields' pocketbook. Along the way, defendant directed the officers to a friend's apartment where he retrieved Ms. Shields' car keys.

The officers took defendant back to the Law Enforcement Center, read him his rights again, and obtained another waiver. The defendant then gave a recorded account of the incidents of 6

October 1984. One of the officers later recovered the pistol used by defendant.

At trial, defendant's recorded statement was played, over objection, for the jury. The defendant testified that he was high on marijuana on the morning of 6 October 1984 and that he did not remember what happened that day until he "woke up" driving the car. He testified that his account of the day's events was a result of what the officers and his friends had told him.

The jury returned a verdict of guilty on both the robbery with a firearm and the felonious larceny counts. After a sentencing hearing at which the court found aggravating and mitigating factors, the court imposed a sentence greater than the presumptive term for the offenses.

## II

Defendant presents ten arguments on appeal. In brief, he asserts that the trial court erred in (1) failing to conduct a full hearing upon defendant's request for the appointment of new trial counsel; (2) admitting a tape recording and transcript without proper authentication; (3) failing to grant a mistrial; (4) failing to dismiss the felonious larceny charge at the close of the evidence; (5) failing to instruct the jury on the defense of voluntary intoxication; (6) failing to strike portions of the prosecutor's closing arguments; (7) finding as an aggravating factor that defendant induced others to participate in the crime; (8) failing to find as a mitigating factor that defendant aided in the apprehension of another felon; and (9) failing to find as a mitigating factor that defendant voluntarily acknowledged wrongdoing at an early stage in the criminal process. Defendant's final argument is that this Court should arrest judgment on the felonious larceny conviction because he cannot be punished for both felonious larceny and armed robbery on the facts of this case. We agree with defendant on his final argument. Therefore, judgment on the felonious larceny conviction is arrested. Because (a) the two convictions were consolidated for judgment and sentencing, (b) a sentence greater than the presumptive term was imposed, and (c) the sentencing court did not indicate to which offense the additional years were added, the case is remanded for resentencing.

### III

[1]  Defendant argues that when he moved the court to appoint substitute counsel, the court should have conducted a full hearing to determine whether substitution of counsel was appropriate. Defendant twice requested substitute counsel, the first time as follows:

> THE DEFENDANT: Your Honor, I would like to make a motion, please, that I would like to have another attorney assigned to me because I don't believe this attorney right here is acting—I don't believe he is protecting me—I mean, defendant me in my best interest and everything. He shows no respect to my family. When he talks to me, he [is] always looking at me like I'm crazy. I do not wish to have this attorney and I wish the State to please give me another attorney.
>
> COURT: Is there anything else you would like to say to the Court before I call the jury back in?
>
> THE DEFENDANT: No, sir.
>
> COURT: All right. Motion denied.

Some time later in the trial, defendant again requested new counsel:

> THE DEFENDANT: Your Honor, I would like to say something. I know Mr. Britt, he is trying his best and everything. But I still wish that I could get another attorney because that tape right there, I don't believe it should have been admissible evidence because I done and talked to other lawyers and they said it shouldn't be admissible evidence because I was interrogated. I don't see why you keep—every time this man say something, you keep denying everything and saying sustained. The man ain't going to get to do his job. . . .

An indigent defendant's right to competent counsel at trial does not encompass the right to choose a specific attorney. *State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980). Mere dissatisfaction with appointed counsel's services is insufficient to trigger the right to substitute counsel. *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976); *State v. Robinson*, 290 N.C. 56, 224 S.E. 2d 174

(1976). In order to invoke this right, "defendant must show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict." *Sweezy*, 291 N.C. at 372, 230 S.E. 2d at 528-29 (citations omitted) (quoting *United States v. Young*, 482 F. 2d 993 (5th Cir. 1973)). Defendant's right is based on the Sixth Amendment guaranty of effective assistance of counsel, but the defendant must raise an apparently substantial complaint regarding the representation provided. The trial court is required to assure that original counsel is reasonably competent and able to render effective assistance. *Thacker*, 301 N.C. at 352, 271 S.E. 2d at 255.

Although generally it is better practice to inquire into defendant's objections the first time defendant raises serious and substantial complaints, the trial court is not required to conduct a detailed hearing to resolve the issue. *Thacker*; *Sweezy*. In the case at bar, defendant raised no issue of conflict of interest or irreconcilable conflict. He noted no instances of incompetency, lack of diligence, or even questionable judgment. *See State v. Poole*, 305 N.C. 308, 289 S.E. 2d 335 (1982) (defendant raised issue of counsel's competence). It appears from defendant's second motion that he believed appointed counsel was "trying his best." Defendant was understandably dismayed at the introduction of the taped statement, but, as the trial court explained, the defense attorney was doing all that he could for defendant.

Each case in which effective assistance of counsel is questioned must be examined individually, and the decision to appoint substitute counsel is committed to the sound discretion of the trial court. *State v. Hutchins*, 303 N.C. 321, 336, 279 S.E. 2d 788, 798 (1981); *State v. Bowen*, 56 N.C. App. 210, 287 S.E. 2d 458, *disc. rev. denied and appeal dismissed*, 305 N.C. 588, 292 S.E. 2d 7 (1982). We hold that it was not error for the trial court in the case at bar to consider defendant's request without a formal hearing. *Thacker*; *Bowen*. No abuse of discretion or ineffective assistance of counsel has been shown.

IV

[2] Defendant's second and third arguments, which he presents together, are that the trial court erred in admitting into evidence a taped conversation and a transcript of the conversation without

proper authentication and that, therefore, the trial court erred in failing to grant defendant's motion for a mistrial based on the admission of that evidence.

Even assuming the State failed to establish that the defendant's entire statement was recorded and that no unexplained changes, additions or deletions had been made—as is required under *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971)—and even though no witness for the State testified that the recorded statement was accurate or complete, the defendant has failed to demonstrate the prejudicial effect of the admission of the challenged evidence. There was overwhelming evidence that the defendant committed the crime as charged. For example, one officer's testimony recounted defendant's previous in-custody interview in which defendant described how he and his friends committed the alleged crime. The victim positively identified the defendant as her assailant. The defendant's wallet was found in the victim's abandoned car one day after the crime, and defendant took the police officers to the stolen pocketbook and keys. There was no alibi defense in this case as there was in *State v. Toomer*, 311 N.C. 183, 316 S.E. 2d 66 (1984). And there were no long, suspicious "gaps" or inaudible portions of the tape as there were in *State v. Shook*, 55 N.C. App. 364, 285 S.E. 2d 328 (1982).

The taped statement and the transcript were cumulative. We cannot say there is a reasonable possibility that had they been excluded, the jury would have reached a different conclusion. *Toomer*.

For similar reasons, the trial court did not err in denying defendant's motion for a mistrial. He has failed to show that the admission of this evidence resulted in "substantial and irreparable prejudice" to his defense or made it impossible for the jury to render an impartial verdict. N.C. Gen. Stat. Sec. 15A-1061 (1983); *see State v. Blackstock*, 314 N.C. 232, 333 S.E. 2d 245 (1985).

V

Defendant next contends that the trial court erroneously failed to dismiss the charge of felonious larceny at the close of all the evidence. In light of our decision in Part IX, *infra*, it is not necessary to address this issue.

## VI

[3] Defendant argues that the court erred in refusing to instruct the jury on the defense of voluntary intoxication. The trial court is required to instruct the jury on voluntary intoxication only if the defendant presents evidence that he or she was "so completely intoxicated as to be utterly unable to form the specific intent necessary at the time the crime was committed." *State v. Williams*, 308 N.C. 47, 71, 301 S.E. 2d 335, 350 (citations omitted), *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177, 104 S.Ct. 202 (1983). In the case at bar, the specific intent essential to convict of robbery is the intent to permanently deprive the owner of his or her goods and appropriate them to the taker's use. *State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965).

The only evidence supporting defendant's claim of intoxication was his own testimony that he and his friends "got high" at about seven o'clock on the morning of 6 October 1984. According to defendant, he had "about two or three joints" of marijuana and "a couple of nods" of cocaine. He claimed that he did not remember the events of the latter part of the day until he "woke up" as he was driving Ms. Shields' car at eight o'clock that evening. He testified that the events he recounted to the officers during the two separate interviews were suggested to him by friends and by the officers.

This evidence is insufficient to require an instruction on voluntary intoxication. The crime was committed nearly nine hours after defendant "got high" — according to Ms. Shields, the incident occurred in the late afternoon, at about four o'clock. Moreover, there was no evidence regarding the effect the drugs had on defendant's ability to reason at the time of the crime. *See State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). He testified only to a subsequent loss of memory. There was, in short, no evidence that he was so intoxicated that he could not form the specific intent necessary at the time the crime was committed.

## VII

[4] Defendant next argues that the trial court committed reversible error in failing to strike the following italicized portions of the district attorney's closing argument:

If you were me, what else would you say to you? He did it. I proved it. You go out there, talk about it and come back in here and find him guilty, regardless of the fact that he is seventeen, regardless of the fact that Mr. Britt says he's going to serve at least fourteen years in prison.

You promised me, each of you, that you would follow the law as the Judge gives it to you.

*You saw his attitude, his demeanor. You let him go, and he'll be right back, hopefully, only on an armed robbery charge—*

MR. BRITT: Objection.

MR. AMMONS: *Hopefully, on an armed robbery charge and not a murder charge.*

MR. BRITT: Objection. Move that all that be stricken and ordered disregarded.

COURT: Overruled.

MR. AMMONS: Mrs. Shields was just a slight pressure on his index finger from being shot.

All I'm asking you to do is what you told me you would do. Do your job. If you're convinced, and I contend you should be, go out there, talk about it and come back in here and say, Mr. Hurst, based on this evidence, overwhelming evidence, we find you guilty as charged.

Generally, wide latitude is allowed counsel during closing argument to the jury, and control of the scope of a prosecutor's remarks is left in the discretion of the trial court. We will not review the court's determination absent "such gross impropriety in the argument as would be likely to influence the verdict of the jury." *State v. Covington*, 290 N.C. 313, 328, 226 S.E. 2d 629, 640 (1976) (citations omitted). Nonetheless, the prosecutor may not place before the jury "incompetent and prejudicial matter" or arguments not supported by the evidence. *Id.*

It is improper for a prosecutor to attempt to induce a jury to convict a defendant in order to prevent him from committing murder in the future. In the case at bar, the State argues that the prosecutor simply made the permissible argument that armed

robbery is a crime next in severity only to murder. *See State v. Brown*, 39 N.C. App. 548, 251 S.E. 2d 706, *cert. denied*, 297 N.C. 302, 254 S.E. 2d 923 (1979). The remark objected to by defendant is susceptible to the interpretation that the jury should convict defendant to prevent him from returning to commit murder. Thus, it is improper. Nevertheless, we hold that on the evidence presented in this case the prosecutor's improper remark was not reversibly prejudicial to defendant. *See Covington.* Even though the trial court did not instruct the jury to disregard the improper remark, it was not so grossly improper that it was "likely to influence the verdict." We do not condone the practice of extending closing remarks beyond fair bounds, but the prosecutor's improper remark was harmless in this case. *See State v. Miller*, 288 N.C. 582, 601, 220 S.E. 2d 326, 338-39 (1975).

### VIII

Defendant's next three arguments relate to the sentencing phase of the trial. He asserts that errors in finding an aggravating factor and in failing to find certain mitigating factors entitle him to a new sentencing hearing under *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). After careful consideration of the facts in this case, the relevant law, and defendant's arguments, we conclude that the trial court did not err in sentencing defendant.

### IX

[5] Defendant's final argument is that this Court should arrest judgment on the felonious larceny conviction because, under the facts of this case, felonious larceny merges with the greater felony of armed robbery. Although we do not hold that felonious larceny of goods worth over $400 merges into the offense of armed robbery, we agree with defendant that judgment on the felonious larceny conviction must be arrested. The basis on our decision is that defendant's right to be free from double jeopardy under Article I, Section 19 of the North Carolina Constitution and Amendments V and XIV to the United States Constitution was violated by his punishment under two statutes which the legislature intended to be mutually exclusive under facts such as those in the case at bar.

The issue before us is whether a single series of acts may support convictions under both N.C. Gen. Stat. Secs. 14-87 (armed

robbery) and 14-72 (felonious larceny) (1981) when there has been only one taking from one victim at one time. We hold that it cannot.

The fundamental constitutional prohibition against placing a person twice in jeopardy for the same criminal offense is "deeply imbedded in our jurisprudence." *State v. Hill*, 287 N.C. 207, 214, 214 S.E. 2d 67, 72 (1975) (citations omitted). "The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986) (citations omitted); *Hill*.

In the instant case, we are concerned with the third category. Recognizing the distinction noted in *Gardner* between single-prosecution and successive prosecution situations, we proceed to analyze this case under the single-prosecution standards as set forth in *Gardner*:

> Where multiple punishment is involved, the Double Jeopardy Clause acts as a restraint on the prosecutor and the courts, not the legislature. *Brown v. Ohio*, 432 U.S. 161, 53 L.Ed. 2d 187 (1977). The Double Jeopardy Clauses of both the United States and North Carolina Constitutions prohibit a court from imposing more punishment than that intended by the legislature. "[T]he question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Whalen v. United States*, 445 U.S. 684, 688, 63 L.Ed. 2d 715, 721 (1980).

315 N.C. at 452-53, 340 S.E. 2d at 707-08; *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535, 103 S.Ct. 673 (1983); *Albernaz v. United States*, 450 U.S. 333, 67 L.Ed. 2d 275, 101 S.Ct. 1137 (1981). "The Double Jeopardy Clause plays only a limited role in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding—that role being only to prevent the sentencing court from prescribing greater punishments than the legislature intended." *Gardner*, 315 N.C. at 460, 340 S.E. 2d at 712. Thus, we must determine whether the legislature intended to allow multiple punishment in situations such as

the one at bar. If it did not, then the imposition of multiple punishment by the trial court was erroneous.

### A

We consider first whether there were one or two criminal "takings." Defendant was charged in a single indictment with two offenses.

In the first paragraph of the indictment he was charged with armed robbery of the victim's purse and its contents (including $350 in cash), a raincoat, a pair of shoes, a brass belt buckle, pantyhose, credit card receipts, an umbrella, a shoe bag and its contents, "an assortment of food items," and four car keys — all valued at $1,057.25. In the second paragraph he was charged with felonious larceny of the car.

It is undisputed that defendant held a gun to the victim's head and that the victim ran away from the car. The items set forth in the first paragraph of the indictment apparently were in the trunk of the car.[1] We believe that defendant's act of taking control of the car and driving the car away from the victim constituted a single act of taking the car and the items within the car. This was not one "series of events" or one "course of conduct." Rather, it was a single act whereby defendant took a car and its contents. Although a course of conduct may be divided into units of activity — a robbery, a burglary, a larceny — in this case, the act of taking the car cannot be separated from the act of taking the items in the trunk.

> Departmentalizing criminal conduct into component parts yielding plural liability is the greatest threat in attempting to avoid multiple punishment, and it is therefore pertinent and indispensable first to determine whether or not one or more punishable transactions legally occurred in the course of a defendant's criminal conduct.

Comment, *Criminal Law—Multiple Punishment and the Same Evidence Rule*, 8 Wake Forest L. Rev. 243, 243 (1972).

---

1. Defendant was not charged with robbery of the victim's keys from her hand as an act separate from the taking of the other items. Some keys are listed in the indictment along with all the items from the trunk. We express no opinion on whether the taking of the keys may be viewed as separate from the taking of the car.

Instructive in this regard is *State v. Fambrough*, 28 N.C. App. 214, 220 S.E. 2d 370 (1975). The defendant and another man entered a motel. The defendant held a knife to an employee's throat, and he took $79 along with a pistol from the victim. Defendant was charged in one indictment with armed robbery of money, and in the other he was charged with armed robbery of a pistol. He was convicted of both. This Court said:

> [W]e find that only one robbery occurred, in which two kinds of property were taken, money and a pistol. The two indictments charged separate offenses. Clearly both indictments and the evidence relate to what occurred on the same occasion. The same evidence would support a conviction on each charge. Under the "same evidence test," this amounts to double jeopardy. *State v. Ballard*, 280 N.C. 479, 186 S.E. 2d 372 (1972).

*Id.* at 214-15, 220 S.E. 2d at 371.

Thus, when several items are taken from one person at the same time, there is only one criminal taking. And, absent specific statutory authorization to the contrary, the prosecutor may not divide property taken at one time from one victim in one place into separate items or units for purposes of prosecuting defendant for separate takings. *State v. Boykin*, 78 N.C. App. 572, 337 S.E. 2d 678 (1985) (When the legislature made larceny of a firearm a felony, it did not intend to allow separate punishments — or "units of prosecution" — for each firearm taken when several firearms were taken at once from the same place.). Thus, if defendant's punishments for both felonious larceny and armed robbery are to be upheld, it must be because the legislature intended to allow punishment under both G.S. Secs. 14-72 and -87 for a single taking.

### B

In *State v. Gardner*, the Supreme Court considered whether the legislature intended to allow multiple punishment for (1) breaking or entering and (2) felonious larceny pursuant to a breaking and entering. The Court examined several factors to determine legislative intent. The Court explained that, in a *single* prosecution analysis, a conclusion that two offenses "merge" or satisfy the "lesser-included-offense" standard is simply one of the

several tools to assist in determining legislative intent. 315 N.C. at 454-55, 340 S.E. 2d at 708-09. We now apply the factors from *Gardner* to assess legislative intent regarding the offenses involved in the case at bar.

First, the *Gardner* Court noted that the two offenses violated "two separate and distinct social norms, the breaking into or entering the property of another, and the stealing and carrying away of another's property." 315 N.C. at 461, 340 S.E. 2d at 712. This stands in contrast to the offenses in the case at bar. Armed robbery and larceny both involve the violation of the same social norm: stealing and carrying away the property of another. And the taking of property worth over $400 does not implicate a separate and distinct social norm—it simply involves a more egregious violation of the same norm. Of course, armed robbery involves the violation of an additional norm: the use or threatened use of a weapon on another person. But to punish for armed robbery *ipso facto* punishes for violating the social norm against stealing and carrying away another's property.

The *Gardner* Court also analyzed the legislative histories of breaking and entering and larceny. There is no need to recount the histories of the offenses involved in the case *sub judice*, as they are found in other cases. *See, e.g., Gardner* (larceny); *State v. Chase*, 231 N.C. 589, 58 S.E. 2d 364 (1950) (armed robbery). It is sufficient for our purposes to note that when the legislature enacted G.S. Secs. 14-72 and -87, it did not intend to change the common law offenses of larceny and robbery. It simply intended to codify the common law and to provide for more severe punishment under certain circumstances. *See Chase*. As explained below, under the common law (at least until 1980) larceny was a lesser included offense of robbery. That is, a defendant could be punished for only one of these offenses if he or she committed only a single criminal act. When the legislature altered the punishment for these offenses in specific situations, it did not intend to change the well-established prohibition against punishment for both larceny and armed robbery of the same property from a single victim. *Cf. Boykin* (When the legislature made larceny of a firearm a felony, it did not intend to allow separate prosecutions for each firearm taken when several were taken at one time.).

In *Gardner*, the Supreme Court's decision that the two offenses involved there were intended to be separately punished

was based partly on the juxtaposition of the offenses within the statutory scheme. 315 N.C. at 462, 340 S.E. 2d at 713. The Court noted that breaking or entering was placed under Article 14 of Subchapter IV, entitled "Offenses Against the Habitation and Other Buildings" while larceny was located under Article 16 of Subchapter V, entitled "Offenses Against Property." Applying this reasoning to the case at bar, we note that armed robbery was placed under Article 17 within the same subchapter as larceny, Subchapter V, entitled "Offenses Against Property."

The Court in *Gardner* also considered prior judicial treatment of the offenses:

> [T]his Court has uniformly and frequently held, from as early as the turn of the century, that breaking and/or entering and larceny are separate and distinct crimes. . . . Our appellate courts have also sustained convictions for both breaking or entering and felony larceny pursuant to breaking or entering in a single trial. . . . It would appear that we have also approved multiple punishments for both offenses. *See State v. Morgan*, 265 N.C. 597, 144 S.E. 2d 633 (1965), *overruled on other grounds*, 275 N.C. 439, 168 S.E. 2d 401 (1969). These many years of uniform construction have been acquiesced in by our legislature. Had conviction and punishment of both crimes in a single trial not been intended by our legislature, it could have addressed the matter during the course of these many years.[2]

315 N.C. at 462-63, 340 S.E. 2d at 713 (citations omitted).

Unfortunately, we are unable to demonstrate uniform construction of the offenses involved in this case. There appears to be a conflict between two lines of North Carolina Supreme Court decisions on whether larceny is a lesser included offense of armed robbery. On one hand, the most entrenched and lengthy series of cases stands for the principle that larceny is a lesser included offense of common law robbery,[3] and that both are lesser included

---

2. The *Gardner* Court's reliance on *Morgan* is severely criticized in the three-justice dissent. It appears that, for one thing, the issue of multiple punishment for the offenses was not squarely raised or addressed in *Morgan*.

3. *See State v. Smith*, 268 N.C. 167, 150 S.E. 2d 194 (1966); *State v. Lawrence*, 262 N.C. 162, 136 S.E. 2d 595 (1964); *State v. Cody*, 60 N.C. 197 (1864); *see also*

offenses of armed robbery.[4] Of course, if the offenses committed are separate in time, separate in place, or directed at different victims, the defendant may be punished for each.[5]

On the other hand, three recent Supreme Court decisions, using a familiar version of the successive-prosecution "same evidence" test (whether each offense requires proof of an element that the other does not), listed the elements of larceny and armed robbery and concluded that the offenses are separate and distinct, rather than concluding that the former is a lesser included offense of the latter. *State v. Murray*, 310 N.C. 541, 548-49, 313 S.E. 2d 523, 529 (1984); *State v. Beaty*, 306 N.C. 491, 500-01, 293 S.E. 2d 760, 766-67 (1982); *State v. Revelle*, 301 N.C. 153, 163, 270 S.E. 2d 476, 482 (1980).

In these three opinions, however, the Court did not attempt to reconcile prior cases which uniformly held that larceny is a lesser included offense of armed robbery. And in only one of these cases, *Beaty*, did the Court suggest which element of larceny is not found in armed robbery:

> For proof of armed robbery it is necessary to show the use or threatened use of a weapon but unnecessary to show *asportation.* For proof of larceny it is necessary to show *asportation* but unnecessary to show the use or threatened use of a weapon.

---

*State v. Henry*, 57 N.C. App. 168, 290 S.E. 2d 775, *disc. rev. denied*, 306 N.C. 561, 294 S.E. 2d 226 (1982); *State v. Reid*, 55 N.C. App. 72, 284 S.E. 2d 519 (1981), *disc. rev. denied*, 305 N.C. 306, 290 S.E. 2d 707 (1982).

4. *See State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981); *State v. Swaney*, 277 N.C. 602, 178 S.E. 2d 399, *appeal dismissed and cert. denied*, 402 U.S. 1006, 29 L.Ed. 2d 428, 91 S.Ct. 2199 (1971); *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970); *State v. Davis*, 242 N.C. 476, 87 S.E. 2d 906 (1955); *State v. Bell*, 228 N.C. 659, 46 S.E. 2d 834 (1948); *see also State v. Owens*, 73 N.C. App. 631, 327 S.E. 2d 42, *disc. rev. denied*, 314 N.C. 120, 332 S.E. 2d 488 (1985).

5. *See State v. Beaty*, 306 N.C. 491, 293 S.E. 2d 760 (1982) (Armed robbery of a single store employee is one robbery, even if property is taken from both employee and store.); *State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974) (Armed robbery of store's property from two clerks is one robbery.); *State v. Johnson*, 23 N.C. App. 52, 208 S.E. 2d 206, *cert. denied*, 286 N.C. 339, 210 S.E. 2d 59 (1974) (Armed robbery of two persons, at same time in same place, where property of each taken constitutes two robberies.); *cf. State v. Richardson*, 279 N.C. 621, 633, 185 S.E. 2d 102, 115 (1971) (Lake, J., concurring).

306 N.C. at 501, 293 S.E. 2d at 767 (emphasis added). As far as we can discern, however, asportation (carrying away money or property) was an element of larceny even during the decades when the Supreme Court held that larceny was a lesser included offense of armed robbery. Indeed, it is difficult to understand how the element of asportation now·could be the distinctive feature of larceny that makes it separate from, rather than included within, armed robbery. *See State v. Bobbitt*, 29 N.C. App. 155, 157, 223 S.E. 2d 398, 400 (1976) ("Of course, the taking and carrying away is an essential element of the crime of robbery."). More likely, asportation had always been implicitly subsumed within the armed robbery requirement that there be "an unlawful taking."[6]

More importantly, it is not clear that the Supreme Court intended to allow multiple punishment for larceny and armed robbery based on the *same taking*. In *Revelle*, the defendant had been charged with and convicted of felonious larceny, armed robbery, burglary, and rape. Although they all occurred in the same series of events, each crime was distinct in time and place. For example, the armed robbery was committed by taking property from two victims at gunpoint in their mobile home, and the felonious larceny occurred after the defendant had left the mobile home, when he took an automobile belonging to one of the victims. The Court held that the four felonies were "factually distinct and independent crimes in this case." 301 N.C. at 163, 270 S.E. 2d at 482.

In *Beaty*, the Court considered the situation of "a defendant charged with two counts of armed robbery resulting from the assault of a lone employee with property taken from both the employee and the business." 306 N.C. at 499, 293 S.E. 2d at 765-66. The Court arrested judgment on one of the two robbery convictions, finding the "controlling factor" to be "the existence of a single assault." *Id.* The Court held that the defendant could have been convicted of armed robbery of "either the attendant or the store but not both." The Court then stated that the "defend-

---

6. Another element of larceny—that the defendant intend to permanently deprive the owner of his or her property—is not listed as an essential element of armed robbery in these recent Supreme Court cases. But it is, of course, an essential element. *Smith*, 268 N.C. at 169, 150 S.E. 2d at 198. This lends credence to the view that the list of elements often used for armed robbery is not literally exhaustive and that asportation is in fact an element of armed robbery.

ant could also have been convicted of a larceny from either [the attendant] or the ABC store had he been so charged." *Id.* at 500, 293 S.E. 2d at 766. It is not clear whether the Court's dicta means that the defendant could have been convicted of larceny of the attendant and armed robbery of the attendant, or whether the two convictions would have to relate to separate victims.

In *Murray*, the defendant had beaten and robbed the victim and had then stolen the victim's car. Although the Supreme Court compared armed robbery and larceny and concluded that the latter was not a lesser included offense of the former, it is clear from the facts of the case that even if larceny were included within armed robbery, the defendant committed one distinct act of robbery and then one distinct act of larceny.

None of the cases discussed above based the distinction between felonious larceny and armed robbery on the $400 minimum value requirement. It may be argued that, although simple larceny and larceny from the person are lesser included offenses of armed robbery, felonious larceny based on the taking of goods worth over $400 is a separate offense that does not merge with armed robbery. *See State v. Henry*, 57 N.C. App. 168, 169-70, 290 S.E. 2d 775, 776, *disc. rev. denied*, 306 N.C. 561, 294 S.E. 2d 226 (1982) (dicta); *see also Smith v. Cox*, 435 F. 2d 453 (4th Cir. 1970), *vacated on other grounds*, 404 U.S. 53, 30 L.Ed. 2d 209, 92 S.Ct. 174 (1971). *But see State v. Chapman*, 49 N.C. App. 103, 270 S.E. 2d 524 (1980) (Defendant was charged with armed robbery of a bag containing $5,165.73 in cash; the Court held that in light of evidence that defendant did not use force before or concurrently with the taking, the trial court should have instructed on the lesser included offense of felonious larceny.).

Even if we assume that either asportation or the $400 minimum value element of the felonious larceny charge and the weapon requirement for armed robbery make the two offenses separate and distinct, this Court must determine, following *Gardner*, whether the legislature has acquiesced in a consistent and uniform construction of the two crimes as separate offenses, thereby implicitly authorizing punishment for both offenses based on a single taking. Clearly, the legislature has not so acquiesced.

The crucial inquiry—whether the legislature intended to allow punishment for both offenses for a single taking from a

single victim at one time—was not resolved in *Murray, Beaty,* or *Revelle,* and we have found no cases in which multiple punishment has been imposed under G.S. Secs. 14-72 and -87 for a single taking. The *Gardner* factors, as applied to the case at bar, strongly suggest that the legislature did not intend to allow multiple punishment under the circumstances of this case.

### C

We believe the case at bar is similar to *State v. McGill,* 296 N.C. 564, 251 S.E. 2d 616 (1979). In *McGill,* defendant was charged with both possession of more than one ounce of marijuana and possession with intent to sell or deliver marijuana. The Supreme Court rejected defendant's argument that felonious possession was a lesser included offense of possession with intent to sell or deliver.

> To prove the offense of possession of over one ounce of marijuana, the State must show possession and that the amount possessed was greater than one ounce. To prove the offense of possession with intent to sell or deliver marijuana, the State must show possession of any amount of marijuana and that the person possessing the substance intended to sell or deliver it. Thus, the two crimes each contain one element that is not necessary for proof of the other crime. One is not a lesser included offense of the other.

> This does not mean, however, that a defendant can be punished for both offenses because of possession of the *same* contraband. Multiple punishment is one facet of the prohibition against double jeopardy. *See State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977). That rule applies "[w]here two or more offenses of the same nature are by statute carved out of the same transaction and are properly the subject of a single investigation." *State v. Midgett,* 214 N.C. 107, 110, 198 S.E. 2d 613, 614 (1938) (quoting *Dowdy v. State,* 158 Tenn. 364, 366, 13 S.W. 2d 794, 794 (1929) ). *See also In re Powell,* 241 N.C. 288, 84 S.E. 2d 906 (1954).

*Id.* at 567-68, 251 S.E. 2d at 619; *accord State v. Pagan,* 64 N.C. App. 295, 307 S.E. 2d 381 (1983). This principle also applies to the crimes of larceny and receiving stolen property when they are applied to the same property. *State v. Meshaw,* 246 N.C. 205, 98 S.E. 2d 13 (1957); *In re Powell,* 241 N.C. 288, 84 S.E. 2d 906 (1954).

State v. Hurst

We conclude that larceny of goods worth over $400 and armed robbery of the same goods from the same person at one time are mutually exclusive offenses; that is, if a defendant is punished for one, he cannot be punished for the other based on the same taking. *Cf. McGill.* Nothing in the statutes suggests a contrary legislative intent. Neither statute provides that armed robbery of goods worth over $400 is punishable under both statutes. *Compare Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535, 103 S.Ct. 673 (1983).

Were we to rule otherwise, every armed robbery in which property worth over $400 were taken also would constitute felonious larceny. For example, if A uses a weapon to take B's wallet, and the wallet contains over $400, A could be punished for two crimes: armed robbery of the wallet and felonious larceny of the money. Similarly, as in the case at bar, if A uses a weapon to steal a car from B, and an item of B's personal property is in the car, A would commit two offenses: armed robbery of the item in the car and felonious larceny of the car (usually worth over $400). And what if the car were equipped with a ski rack or contained a removable cassette deck, seat covers, or a spare tire? Would the defendant be subject to punishment for both felonious larceny of a car and armed robbery of a component part of the car to be defined by the prosecutor?

The State would have us establish by judicial fiat two degrees of armed robbery: (1) ordinary armed robbery (if the goods taken are worth $400 or less), and (2) aggravated armed robbery, that is, armed robbery plus felonious larceny (if the goods taken are worth over $400 and *any* other item is taken, even incidentally). We do not interpret this to be the will of the legislature. Courts should avoid interpreting criminal statutes to increase penalties absent clear legislative intent. *See Albernaz v. United States*, 450 U.S. 333, 67 L.Ed. 2d 275, 101 S.Ct. 1137 (1981). If the legislature wishes to increase the penalty for armed robbery when goods worth over $400 are taken, it is free to do so.

In sum, the defendant cannot be punished for felonious larceny and armed robbery based on a single taking from one person at one time. Judgment is arrested on the felonious larceny conviction. *See Hatcher.*

## X

[6] The armed robbery and felonious larceny convictions were consolidated for judgment and sentencing. The presumptive sentence for armed robbery is fourteen years, G.S. Sec. 14-87(d), and for felonious larceny, three years, G.S. Sec. 14-72(a) (Class H felony); N.C. Gen. Stat. Sec. 15A-1340.4(f)(6) (1983). Because defendant's twenty-year sentence exceeded the total of the presumptive terms, the court was required to make specific findings in aggravation and mitigation. G.S. Sec. 15A-1340.4(b). The court did not indicate, however, whether the additional years were added for the armed robbery or the felonious larceny conviction, or both. Because one of the aggravating factors (defendant induced others to participate in the offense) might apply to either one or both convictions, the case must be remanded for resentencing. *Cf. State v. Miller*, 316 N.C. 273, 341 S.E. 2d 531 (1986).

For the reasons set forth above, judgment is arrested on the felonious larceny conviction, the armed robbery conviction is upheld, and the case is remanded for resentencing.

Felonious larceny — judgment arrested.

Armed robbery — no error.

Remanded for resentencing.

Judges WHICHARD and PARKER concur.