STATE OF NORTH CAROLINA v. WILLIE JAMES WHITE

No. 8626SC879

(Filed 7 April 1987)

**1. Criminal Law § 128.1— mistrial—failure to state grounds—harmless error**

    Where the grounds for mistrial were clear from the record before the court on appeal and were obviously clear to the trial court at the hearing on defendant's motion to dismiss, defendant was not prejudiced by the trial judge's failure to make findings supporting the mistrial order, and such omission constituted harmless error.

**2. Criminal Law § 26.8— mistrial for prosecutorial misconduct—retrial not barred**

    There was no merit to defendant's contention that retrial was barred due to the prosecutor's intentional misconduct where the trial judge properly considered the evidence and found no intent to provoke a mistrial; furthermore, there was no bad faith prosecutorial overreaching or harassment aimed at prejudicing defendant's chances for acquittal, and it did not appear from the record that the State's case was going so badly and the prejudice resulting from the prosecutor's conduct was so grave that defendant's choice to continue or to abort the proceedings was rendered unmeaningful.

**3. Larceny § 1; Robbery § 1.2— armed robbery—misdemeanor larceny as lesser offense**

    In a prosecution of defendant for robbery with a dangerous weapon the trial court erred in refusing to instruct the jury as to misdemeanor larceny,

since misdemeanor larceny is a lesser included offense of armed robbery; defendant's evidence regarding his acquisition of another person's automobile would support a conviction of larceny; and the State introduced no evidence of value, making the larceny punishable only as a misdemeanor.

Judge JOHNSON concurring in part and dissenting in part.

APPEAL by defendant from *Friday, Judge*. Judgment entered 26 March 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 February 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General G. Patrick Murphy for the State.*

*Public Defender Isabel Scott Day and Assistant Public Defender Gail Phillips Merritt for defendant appellant.*

BECTON, Judge.

Defendant, Willie James White, was charged in a proper indictment with robbery with a dangerous weapon. On 9 December 1985 a jury was empaneled, and trial commenced before Judge Robert E. Gaines. Near the conclusion of the trial, and due to improper questioning of defendant by the prosecutor, defendant's motion for a mistrial was granted.

On 6 March 1986, prior to a second trial, defendant filed a motion to dismiss the indictment on double jeopardy grounds. After a hearing before Judge Chase B. Saunders, the motion was denied. Upon retrial defendant was convicted and sentenced to the presumptive term of 14 years imprisonment for robbery with a firearm. Defendant appeals.

Defendant presents four arguments on appeal, contending that the trial court erred in (1) denying his 6 March motion to dismiss, (2) refusing to instruct the jury as to misdemeanor larceny, (3) refusing to permit defense counsel to use leading questions on direct examination of an allegedly hostile witness, and (4) sustaining the State's objection to a portion of defense counsel's closing argument. We find merit in defendant's second argument and accordingly award him a new trial.

I

The State's evidence tended to show that the defendant by use of a handgun took a 1974 Honda automobile from its owner,

Roberta Stitt, in Charlotte, North Carolina. Stitt testified that just before midnight on 19 June 1985, she drove to Shelia Smith's house at Piedmont Court Apartments where she waited outside for Smith. Then she and Smith left together to go to a convenience store. On their way, as they rounded a sharp curve on Siegle Avenue at a slow speed, a man opened the driver's door, put a gun to Stitt's head, and pulled her out of the car. Meanwhile, Smith, who was in the passenger seat, jumped from the car and ran. Then the man got into the car and drove away. Stitt and Smith ran together from the scene to a police car.

Shelia Smith testified for the State and corroborated Stitt's story. Both women picked the defendant out of a photographic line-up, and both identified the defendant in court as the robber.

Stitt's vehicle was located across the street from the defendant's girlfriend's house in Forest City. Credit cars belonging to Stitt and keys to the car were located at the girlfriend's house. Vickey Camp testified that on 20 June 1986 defendant tried to sell her a car radio in Forest City. Stitt had testified that her car radio was missing from the dash when she recovered her car.

The defendant testified that he first met Stitt in the parking lot of Piedmont Court Apartments, outside Shelia Smith's residence, where he asked Stitt for a ride to Belmont. Stitt agreed, and after Smith joined them, the three headed toward North Charlotte. On the way, defendant and Stitt engaged in a conversation about drugs, and defendant gave Stitt $35.00 to buy him some cocaine. The car stopped on Alexander Street, a disagreement developed about the purchase, and defendant demanded his money back. Stitt refused and told defendant to get out of the car. Defendant then told Stitt "they was goin' give me somethin', my money or somethin'," and reached toward the front seat. Stitt and Smith jumped from the car and ran, and defendant drove away in the car to Forest City where he was later arrested.

The defense also called Johnsie Smith, Shelia Smith's mother, who testified that when she arrived home after midnight on 20 June 1986, she observed Stitt talking to a man in the parking lot and the man asked for a ride to Belmont. Johnsie Smith then went into her home and told Shelia not to allow the man outside to get into the car or to take him anywhere. Later, Shelia called

from the police station and told her mother that Stitt's car had been stolen while she and Stitt were inside the convenience store.

At the second trial in March 1986, essentially the same evidence was presented. However, Shelia Smith was not called to testify by the State but was called as a witness for the defense. On cross-examination, she testified that she told her mother the car was taken while she and Stitt were in the store because her mother had been "getting onto" her about being out late.

II

We first consider defendant's double jeopardy arguments. During the second day of testimony at the first trial, Judge Gaines sustained an objection to an attempt by the prosecutor, on cross-examination of defendant, to elicit testimony regarding the circumstances of a prior conviction. The prosecutor nevertheless began his re-cross examination with the following improper question:

Isn't it true that on [the] assault on female conviction you were originally tried on second degree rape?

Defense counsel's immediate motion for a mistrial was granted. The prosecutor apologized to the court and requested a limiting instruction but offered no explanation for asking the question.

Judge Gaines made no findings of fact to support the mistrial order. However, the transcript clearly shows that mistrial resulted from the improper question, which the judge characterized as "probably one of the most flagrant violations of solicitorial power that I have ever observed."

Defendant now contends that the first trial was terminated due to intentional misconduct of the prosecutor, calculated to provoke a mistrial, and, therefore, further prosecution was barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and by Article I, Section 19 of the Constitution of North Carolina. In addition, he argues that retrial is prohibited because the court failed to make findings of fact before ordering the mistrial as required by N.C. Gen. Stat. Sec. 15A-1064 (1983). We reject both contentions.

A

[1] Regarding the requirement of findings of fact, the *Official Commentary* following G.S. Sec. 15A-1064 states:

> This provision will be important when the rule against double jeopardy prohibits retrial unless the mistrial is upon certain recognized grounds *or unless the defendant requests or acquiesces in the mistrial. If the defendant requests or acquiesces in the mistrial, that finding alone should suffice.* (Emphasis added.)

Ordinarily, "[w]here the mistrial has been granted at defendant's request, there can be no prejudice *to defendant* in the failure to make such findings." *State v. Moses*, 52 N.C. App. 412, 418, 279 S.E. 2d 59, 64, *cert. denied*, 303 N.C. 318, 281 S.E. 2d 390 (1981). However, when, as in the case *sub judice*, a defendant contends that serious prosecutorial misconduct precipitated his motion for mistrial, findings of fact may be as essential to adequate review of his double jeopardy claim as in a case in which mistrial is ordered over the defendant's objection. Nevertheless, because from the record before us, the grounds for the mistrial are clear, and were obviously clear to the trial court at the hearing on defendant's motion to dismiss, we conclude that defendant has not been prejudiced by Judge Gaines' failure to make the required findings and that the omission thus constitutes harmless error.

B

[2] We next turn to defendant's contention that retrial was barred due to the prosecutor's intentional misconduct. In his order denying defendant's motion to dismiss, Judge Saunders made the following pertinent finding of fact:

> 9. Based upon [arguments and briefs of counsel, affidavits, and the transcript of the trial proceeding] . . . the Assistant District Attorney did not intend to goad the defendant into moving for a mistrial so as to improve the chances of the State upon retrial for a conviction.

The court concluded as a matter of law that defendant was not entitled to invoke the protection of either the federal or state constitution and

2. That assuming arguendo, the Assistant District Attorney acted in bad faith, a review of the record and affidavits fails to establish that the prosecutor's behavior in question was conducted so as to afford the prosecution a more favorable opportunity to convict the defendant, the record reflecting that there was ample evidence before the jury upon which a verdict favorable to the State could be returned.

We must determine whether these findings and conclusions are supported by the evidence and whether they, in turn, support the court's denial of relief to defendant.

Freedom from multiple prosecutions for the same offense is guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 19 of the Constitution of North Carolina. *See United States v. Dinitz*, 424 U.S. 600, 47 L.Ed. 2d 267 (1976); *State v. Shuler*, 293 N.C. 34, 235 S.E. 2d 226 (1977). As a general rule, the prohibition against double jeopardy does not bar reprosecution when a trial terminates in a mistrial upon the motion, or with the consent, of the defendant, even if the defendant's motion is motivated by a prosecutorial error. *United States v. Jorn*, 400 U.S. 470, 485, 27 L.Ed. 2d 543, 556 (1971); *see also State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243 (1954); *State v. Cuthrell*, 66 N.C. App. 706, 311 S.E. 2d 699 (1984). An exception to this rule exists for certain cases in which the defendant's motion is prompted by serious misconduct by the judge or prosecutor.

1. In *Oregon v. Kennedy*, 456 U.S. 667, 72 L.Ed. 2d 416 (1982), the United States Supreme Court redefined the standard for the prosecutorial misconduct exception so as to limit the circumstances under which a defendant who moves for a mistrial may invoke the double jeopardy bar to those cases in which the prosecutorial misconduct giving rise to the motion was intended to "goad" or provoke the defendant into moving for a mistrial. Prior decisions of that court had phrased the standard in broader terms of "prosecutorial or judicial overreaching," *see United States v. Jorn*, 400 U.S. at 485, 27 L.Ed. 2d at 556, or "prosecutorial impropriety designed to avoid an acquittal," *id.*, n.12. In *Lee v. United States*, the Court had stated that retrial was not barred "unless the judicial or prosecutorial error that prompted petitioner's motion was 'intended to provoke' the motion *or* was

otherwise 'motivated by bad faith or undertaken to harass or prejudice' petitioner." 432 U.S. 23, 33-34, 53 L.Ed. 2d 80, 89 (1977) (*quoting United States v. Dinitz* at 611, 47 L.Ed. 2d at 276) (emphasis added).

The *Oregon v. Kennedy* test is a very narrow one which requires a finding of specific intent to cause a mistrial. Under that standard, a finding by the trial court that the prosecutorial conduct in question was not so intended is conclusive if supported by competent evidence. The existence of such intent must generally by inferred from objective facts and circumstances. In the present case, the trial judge as factfinder considered the evidence and found no intent to provoke a mistrial. We cannot conclude that the court's determination is unreasonable or erroneous based upon the evidence before it. Therefore, defendant's retrial was not precluded by the Double Jeopardy Clause of the federal constitution.

2. We find no appellate decisions of North Carolina courts which expressly set forth the standard for prosecutorial misconduct to be applied in assessing double jeopardy claims under the Constitution of North Carolina. Our state courts are not bound, in interpreting our state constitution, by federal court decisions construing similar provisions of the federal constitution. *Bulova Watch Co. v. Brand Distributors of North Wilkesboro, Inc.*, 285 N.C. 467, 206 S.E. 2d 141 (1974). *See also State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344 (1965).

In *Oregon v. Kennedy*, Justice Stevens wrote a concurring opinion, joined by three other justices, in which he soundly criticized the majority for "lop[ping] off a portion of the previously recognized exception" to the general rule permitting retrial after a mistrial declared on defendant's motion. We agree with Justice Stevens that

> [i]t is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant. . . . [T]he Court's subjective intent standard would eviscerate the exception.

*Oregon v. Kennedy* at 688, 72 L.Ed. 2d at 432-33 (Stevens, J., concurring) (footnotes omitted). In our view, the better reasoned

arguments support the broader test that includes bad faith prose-
cutorial overreaching or harassment aimed at prejudicing the de-
fendant's chances for acquittal, whether in the current trial or a
retrial. We believe that

> [T]o invoke the exception for overreaching, a court need not
> divine the exact motivation for the prosecutorial error. It is
> sufficient that the court is persuaded that egregious prosecu-
> torial misconduct has rendered unmeaningful the defendant's
> choice to continue or to abort the proceeding.

*Id.* at 689, 72 L.Ed. 2d at 433.

Despite our espousal of this broader standard, we neverthe-
less uphold the trial court's determination that the defendant in
this case has not established his double jeopardy claim under our
state constitution. Even under the "overreaching" or "harass-
ment" test, a defendant bears a heavy burden of establishing a
bar to reprosecution when he has requested the mistrial. *Id.* at
688, 72 L.Ed. 2d at 433.

We make no attempt to identify all the relevant factors that
may influence a court's ruling. However, in addition to requiring a
finding of deliberate misconduct, we agree with Justice Stevens
that

> because the defendant's option to abort the proceeding after
> prosecutorial misconduct would retain real meaning for the
> defendant in any case in which the trial was going badly for
> him, normally a required finding would be that the prosecu-
> torial error virtually eliminated, or at least substantially re-
> duced, the probability of acquittal in a proceeding that was
> going badly for the government.

*Id.* at 690, 72 L.Ed. 2d at 434 (footnote omitted). *But see id.* n.31.
In the present case, Judge Saunders concluded that there was
ample evidence upon which the jury could have convicted the
defendant. Although the prosecutor's conduct appears to have
been deliberate, from our review of the record we cannot say that
the State's case was going so badly and the prejudice resulting
from the prosecutor's conduct was so grave that the defendant's
choice to continue or to abort the proceedings was rendered un-
meaningful.

## III

**[3]**   Defendant further claims that he was entitled to a jury instruction on misdemeanor larceny. We agree.

It is a well-established rule in North Carolina that

[w]hen a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser, all of which could be proved by proof of the allegations in the indictment. Further, when there is some evidence supporting a lesser included offense, a defendant is entitled to a charge thereon . . . and error in failing to do so will not be cured by a verdict finding a defendant guilty of a higher degree of the same crime.

*State v. Weaver*, 306 N.C. 629, 633-34, 295 S.E. 2d 375, 377 (1982); *State v. Banks*, 295 N.C. 399, 415-16, 245 S.E. 2d 743, 754 (1978).

Larceny is the felonious taking and carrying away of the personal property of another without his consent and with the intent to permanently deprive the owner of his property. *See State v. Boykin*, 78 N.C. App. 572, 576, 337 S.E. 2d 678, 681 (1985); *State v. Lamson*, 75 N.C. App. 132, 134, 330 S.E. 2d 68, 69, *disc. rev. denied*, 314 N.C. 545, 335 S.E. 2d 318 (1985). In the instant case, the indictment for armed robbery alleged, in part, that the defendant "did unlawfully, wilfully, and feloniously steal, take, and carry away another's personal property" by means of an assault with a firearm. Unquestionably, all of the essential elements of larceny would be proven by proof of the allegations in the indictment. Equally clear is that defendant's evidence regarding his acquisition of Roberta Stitt's automobile would support a conviction of larceny. Furthermore, although the indictment charged that the value of the stolen property was approximately $1,490.00, the State introduced no evidence of value. In order to convict of felony larceny, the State must prove beyond a reasonable doubt that the value of the stolen property exceeded $400; otherwise, the larceny is punishable only as a misdemeanor. *See, e.g., State v. Jones*, 275 N.C. 432, 168 S.E. 2d 380 (1969), N.C. Gen. Stat. Sec. 14-72 (1986). The judge must so instruct the jury. *E.g., State v. Jones.* Based on the foregoing, we conclude that the court's refus-

al to instruct the jury on misdemeanor larceny was prejudicial error.

The State initially argues that defendant was not entitled to the instruction because misdemeanor larceny is not a lesser included offense of armed robbery. Recently, in *State v. Hurst*, 82 N.C. App. 1, 346 S.E. 2d 8 (1986), this Court discussed thoroughly the apparent conflict between two lines of North Carolina Supreme Court decisions on whether larceny is a lesser included offense of armed robbery. There we noted that "the most entrenched and lengthy series of cases stands for the principle that larceny is a lesser included offense of common law robbery, and that both are lesser included offenses of armed robbery," *id.* at 15-16, 346 S.E. 2d at 17. *See* cases cited in accompanying nn.3, 4.

The State relies, however, upon three recent decisions in which the Court reached the opposite conclusion without reconciling the prior cases. *See State v. Murray*, 310 N.C. 541, 548-49, 313 S.E. 2d 523, 529 (1984); *State v. Beatty*, 306 N.C. 491, 500-01, 293 S.E. 2d 760, 766-67 (1982); *State v. Revelle*, 301 N.C. 153, 163, 270 S.E. 2d 476, 482 (1980). We conclude that those decisions do not control the resolution of this appeal. The issue in each of those cases involved the constitutional double jeopardy prohibition, not the defendant's right to a particular jury instruction. Moreover, the Court's discussion and conclusion regarding the lesser included offense issue was unnecessary to the holding in any of the three cases, since each involved multiple offenses separate in time, separate in place, or directed at different victims so as to support the convictions for both larceny and armed robbery. *See generally Hurst* at 16-18, 346 S.E. 2d at 17-18.

Cases which have specifically addressed the jury instruction question presented here support the defendant's claim. In *State v. Chapman*, 49 N.C. App. 103, 270 S.E. 2d 524 (1980), this Court held that the trial judge should have instructed the jury on larceny when the State's evidence tended to show an unlawful taking from a former employer accomplished by an assault with a knife, but the defendant testified that he took the money without the use of a knife or threats. *See also State v. Perry*, 38 N.C. App. 735, 248 S.E. 2d 755 (1978) (error not to submit misdemeanor larceny in prosecution for armed robbery when defendant's evi-

dence showed a taking without the use of a weapon). We find this precedent controlling in the present case.

Furthermore, even if lesser included offenses must be assessed by the same analysis for jury instruction purposes as for double jeopardy purposes, our holding in *Hurst*, a double jeopardy case, supports our ruling in favor of defendant. In *Hurst*, we held that convictions of both armed robbery and larceny could not stand when both convictions were based upon a single taking. In the case at bar, defendant is similarly accused of a single taking and, under the rule enunciated in *Hurst*, could not be convicted of both offenses. Consequently, on these facts (involving a single taking), larceny is not a separate and distinct offense but is subsumed within the crime of armed robbery.

The State maintains that larceny *definitionally* is not a lesser included offense of armed robbery because armed robbery (unlike common law robbery) is defined to require *either* an actual or attempted taking whereas larceny requires an *actual* taking. Thus, the State argues, larceny contains an essential element not contained in armed robbery. However, this reasoning is identical to that rejected by this Court in *State v. Owens*, 73 N.C. App. 631, 327 S.E. 2d 42, *disc. rev. denied*, 314 N.C. 120, 332 S.E. 2d 488 (1985) in which we held, despite the fact that common law robbery requires an actual taking, that common law robbery is a lesser included offense of robbery with a dangerous weapon, and that a jury instruction on the former was proper in a trial for the latter. In the case before us, the indictment charged the defendant with an actual taking, and proof of the taking was essential to a conviction of the offense charged. Moreover, both the State's and the defendant's evidence showed an actual taking. The only conflict in the evidence pertains to whether the taking was accomplished by means of an assault with a weapon. We believe it would be unreasonable under these circumstances to deny the defendant an instruction on larceny merely because the armed robbery statute establishes "attempted taking" as an alternative ground for an indictment.

We summarily reject the State's alternative argument that, even if larceny is a lesser included offense of armed robbery, the defendant's evidence does not support a charge of larceny. The State contends (1) that defendant's statement to Stitt, "y'all gonna

give me somethin' back, my money or somethin' " establishes that he took the automobile under a claim of right, (2) that evidence defendant called Stitt and told her where her car keys were shows that defendant did not intend to permanently deprive Stitt of her car, and (3) that, therefore, the requisite felonious intent for larceny was not established. However, these are merely inferences which the jury could, but need not, draw from the evidence.

For the foregoing reasons, we hold that the court's failure to give the requested instruction on misdemeanor larceny was prejudicial error, and defendant is entitled to a new trial. Because of our holding, we deem it unnecessary to address the defendant's two remaining assignments of error.

New trial.

Judge PHILLIPS concurs.

Judge JOHNSON concurs in part and dissents in part.

Judge JOHNSON concurring in part and dissenting in part.

I concur in the majority opinion except for the part pertaining to the issue of defendant's right to a jury instruction on larceny as a lesser included offense of armed robbery. To that part of the opinion, I respectfully dissent. The majority holds that, for purposes of defendant's right to particular jury instructions, larceny is a lesser included offense of armed robbery. In so holding the majority attempts to distinguish the facts *sub judice* from the facts in *State v. Murray*, 310 N.C. 541, 313 S.E. 2d 523 (1984), *State v. Beatty*, 306 N.C. 491, 293 S.E. 2d 760 (1982), and *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980).

Although I agree with the majority's reasoning, I am compelled by the clear language in the cases *supra* to dissent. Our Supreme Court said most emphatically in *Revelle, supra,* at 163, 270 S.E. 2d at 482, that armed robbery and larceny "*are legally separate, distinct crimes and [neither] of the offenses is a lesser included offense of the other.*" (Emphasis supplied.) This mandate was reiterated in *Murray, supra,* at 548-49, 313 S.E. 2d at 529, and *Beatty, supra,* at 500-01, 293 S.E. 2d at 766-67. Nowhere in any of

these three cases does the Court limit the scope of its holdings to claims of double jeopardy or failure to give particular instructions. Although the Court did not explicitly overrule its long line of cases holding larceny to be a lesser included offense of armed robbery, *Murray, Beatty* and *Revelle* implicitly overrule those previous cases. Therefore, I must dissent.